Donna BOWAN, By and Through Her
Next Friend, Audrey BOWAN,
Respondent/Cross–Appellant,

v.

EXPRESS MEDICAL TRANSPORT-
ERS, INC. and Amy Jo Demery, Ap-
pellants/Cross–Respondents.

Nos. ED 82950, ED 82944.

Missouri Court of Appeals,
Eastern District,
Division One.

March 23, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 13, 2004.

Peter J. Dunne, Susan L. Thurmer, St. Louis, MO, for appellant.

James P. Leonard, Michael D. Stokes, St. Louis, MO, for respondent.

Larry Smith, Clayton, MO, for Amy Jo Demery.

MARY R. RUSSELL, Judge.

Express Medical Transporters, Inc. ("EMT") appeals from the judgment entered on a jury verdict in favor of Donna Bowan ("Passenger") on her negligence action against EMT.[1] It raises three points on appeal. EMT first asserts that the trial court erred in denying its motion for judgment notwithstanding the verdict and motion for new trial in that Passenger failed to prove that it had a common law duty to "make certain" she wore a seat belt while riding in its van. It further argues that if it did have a duty to "make certain" she was seat belted, the duty was satisfied after Passenger admitted she was aware she was not seat belted and chose not to wear a seat belt. EMT's second allegation of error concerns the trial court's overruling its objections to the testimony of Passenger's non-expert witness, who was allowed to testify regarding the alleged custom and practice in the transportation industry relating to the transport of handicapped passengers. EMT's final point argues that the trial court erred

---

1. EMT's co-defendant in this case, Amy Jo Demery, did not appeal.

in giving the jury Instruction 6, Passenger's verdict director, and its corresponding verdict form, in that they presented an incorrect statement of the law as to the existence of a duty to "make certain" Passenger was seat belted.

Passenger cross-appeals, arguing that the trial court erred in granting EMT's post-trial motion to amend the judgment pursuant to section 537.065 RSMo 2000[2] because the trial court improperly reduced the judgment by the amount of a pretrial settlement rather than: (1) entering a judgment in accordance with the verdict; (2) adding prejudgment interest pursuant to section 408.040(2); and (3) thereafter granting EMT a partial satisfaction for the amount of the pretrial settlement.

We affirm as to EMT's appeal, but we reverse as to Passenger's cross-appeal and remand for calculation of prejudgment interest.

Passenger was born in 1960, and was a healthy, normal child until she developed encephalitis, a swelling of the brain, when she was 8 years old. As result, she developed physical disabilities, including the limited use of her left arm, no use of her left hand, and a limp. She also developed short-term memory problems. Passenger had an IQ of 74, and was described as having the mental abilities of a 12–year old. She did not live independently until 1993, first with a roommate, and then by herself, in an apartment. She was able to care for her personal hygiene and cooking needs, but received assistance for grocery shopping and managing her finances. She received assisted transportation from her residence to her job at Lafayette Industries, a sheltered workshop—a work environment for physically and mentally handicapped adults.

Passenger was transported to her job by EMT, a non-emergency transportation company, who contracted with the Missouri Department of Mental Health to provide transportation for employees of the sheltered workshop. EMT's duties included picking up Passenger and other employees from their homes and taking them to work. The driver for Passenger's route was Larry Briggs ("Driver").

Driver was transporting Passenger and others home from work when the 14–passenger EMT van he was driving was involved in a motor vehicle accident at the intersection of Olive and Ladue Streets in St. Louis. At the time of this accident, Passenger was seated in the row of seats immediately behind Driver.[3] She was not seat belted and was thrown into the area between Driver's seat and the front passenger seat. As a result of this accident, her spinal column was severed and she became a paraplegic, requiring her to move to a nursing home.

Passenger brought a negligence action against EMT[4] and the driver of the other

---

2. All further statutory references are to RSMo 2000 unless otherwise indicated.

3. Driver and Passenger presented conflicting testimony regarding where Passenger was seated on the day of the accident. Driver maintained that Passenger was seated in the middle seat of the row of seats immediately behind him. Passenger asserted that she was seated in the seat directly behind the front passenger's seat, the seat nearest the loading door.

4. Passenger's claims against EMT arose under the doctrine of respondeat superior, which imposes upon EMT vicarious liability for negligent acts or omissions of its employees that are committed within the course and scope of their employment. *Jones v. Brashears*, 107 S.W.3d 441, 445 (Mo.App.2003) (citing *Wilson v. St. Louis Area Council, Boy Scouts of Am.*, 845 S.W.2d 568, 570 (Mo.App. 1992)). EMT did not contest its liability under this doctrine and Driver's liability is imputed to EMT in this case.

motor vehicle involved in the accident. After a three-day trial, the jury found EMT and the other driver jointly and severally liable in the amount of $3.5 million. EMT was assessed 30 percent fault for violation of a traffic signal and 20 percent fault for failing to "make certain" that Passenger was wearing her seat belt. Passenger was assessed 20 percent fault for failing to wear her seat belt, and the other driver was assessed 30 percent fault for failure to keep a careful lookout or failure to yield the right-of-way. After accounting for the fault assessed to her, the court entered a judgment in Passenger's favor for $2.8 million, plus costs. EMT filed motions for judgment notwithstanding the verdict and for new trial, which were denied. EMT also filed a motion to amend the judgment pursuant to section 537.065, and Passenger filed a motion to amend the judgment pursuant to section 408.040(2). After post-trial motions were heard, the trial court entered an order amending the judgment to the amount of $1.84 million. EMT's appeal and Passenger's cross-appeal followed.

### Was There a Duty to Make Certain Passenger Was Seat Belted?

EMT's first point argues that the trial court erred in denying its motions for judgment notwithstanding the verdict and for new trial because Passenger failed to prove that it had a common law duty to "make certain" she wore a seat belt while riding as a passenger in EMT's van. It argues that even if it did have a duty to "make certain" she was seat belted, that duty was satisfied because she admitted that she was aware she was not seat belted and chose not to wear her seat belt.

Our standard of review for an order denying a motion for new trial is abuse of discretion, which we will find only where the trial court's ruling was so arbitrary and unreasonable that it shocks our senses

of justice and indicates a lack of careful consideration. *State v. Ginn*, 31 S.W.3d 454, 457 (Mo.App.2000). For example, the denial of a new trial would be an abuse of discretion where it was based on findings not substantially supported by the record. *Id.*

■ The standard of review for reviewing a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 338 (Mo.App.2000). A case is not submissible unless each and every fact essential for liability is predicated upon legal and substantial evidence. *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000). To determine whether Passenger made a submissible case, we consider the evidence, and all reasonable inferences therefrom, in the light most favorable to the plaintiff, and we disregard all evidence contrary to plaintiff's claim. *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 657 (Mo.App.1999) (citing *Cline v. Friedman & Assocs., Inc.*, 882 S.W.2d 754, 758 (Mo.App.1994)).

■ To make a claim based on negligence, a plaintiff must establish that: (1) the defendant had a duty to protect her from injury; (2) the defendant failed to perform that duty; and (3) the defendant's failure proximately caused injury to the plaintiff. *Sill v. Burlington N. R.R.*, 87 S.W.3d 386, 391 (Mo.App.2002) (citing *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000)).

■ In a negligence action, we will find the evidence was sufficient to present a submissible case if it can be fairly inferred that the defendant was negligent. *Stalcup*, 989 S.W.2d at 657. Where the jury is only able to determine negligence via conjecture and surmise, we will find that plaintiff failed to make a submissible case.

*Id.* (citing *Mills v. Redington,* 736 S.W.2d 522, 524 (Mo.App.1987)).

Passenger alleged two distinct counts of negligence against EMT: (1) negligence in the operation of the motor vehicle and (2) negligence in the loading of her into the van. She argues that at trial she elicited sufficient evidence supporting both of these counts, thereby making them submissible to a jury.

EMT argues it cannot be negligent for failure to "make certain" that Passenger was seat belted because it had no duty to do so. It asserts that no statutory or common law duty to seat belt adult passengers exists, and so it could not be negligent for failing to ensure that she was seat belted. It points out that Missouri law only creates a statutory duty for drivers to seat belt passengers in their vehicles who are between the ages of four and 16.[5] It argues that this statutory duty cannot be extended to create a common law duty for it to ensure that its handicapped adult passengers are seat belted.

▮ The only element of negligence that is determined as a matter of law is the duty element. *Sill,* 87 S.W.3d at 391 (citing *Deuschle v. Jobe,* 30 S.W.3d 215, 218 (Mo.App.2000)). A duty to exercise care can be imposed by a controlling statute or ordinance, assumed by contract, or imposed by common law under the circumstances of a given case. *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo.1976).

▮ When considering if a duty exists in a particular case, we look at several policy factors, including the following: (1) whether society finds the interest is worthy of protection; (2) the foreseeability of harm and degree of certainty that the protected person suffered injury; (3) the moral blame society places on the conduct; (4) the prevention of future harm; (5) the costs and the ability to spread the risk of loss; and (6) the economic burden on the actor and community. *Strickland v. Taco Bell Corp.,* 849 S.W.2d 127, 132 (Mo.App. 1993) (citing *Hoover's Dairy, Inc. v. Mid–Am. Dairymen,* 700 S.W.2d 426, 432 (Mo. banc 1985)). When considering if a duty is owed, we look for a relationship between the plaintiff and the defendant that the law recognizes as the basis of the duty of care. *Parra v. Bldg. Erection Servs.,* 982 S.W.2d 278, 283 (Mo.App.1998) (citing *Bunker v. Ass'n of Mo. Elec. Coops.,* 839 S.W.2d 608, 611 (Mo.App.1992)). We look "'to the body of statutes, rules, principles and precedents which make up the law'" when determining whether this relationship exists. *Id.* (quoting *Kopoian v. George W. Miller & Co.,* 901 S.W.2d 63, 68 (Mo.App. 1995)).

▮ Missouri courts recognize that a defendant can assume a duty. *Martin v. Mo. Highway and Transp. Dept.,* 981 S.W.2d 577, 580 (Mo.App.1998) (citing *Bowman v. McDonald's Corp.,* 916 S.W.2d 270, 287 (Mo.App.1995) and *Kilventon v. United Mo. Bank,* 865 S.W.2d 741, 745 (Mo.App.1993)). If a defendant assumes a duty, by contract or by conduct, he can be held liable for injuries caused by the unsafe performance of that assumed duty. *See Kilventon,* 865 S.W.2d at 745. For example, our Supreme Court has adopted section 323 from the Restatement (Second) of Torts, which imposes a duty on those who voluntarily render services to another.[6] *Strickland,* 849 S.W.2d at 132 (citing

---

5. Section 307.178.3 states: "Each driver of a motor vehicle transporting a child four years of age or more, but less than sixteen years of age, shall secure the child in a properly adjusted and fastened safety belt."

6. Under this section, one who volunteers to render a service to another, which he should recognize as necessary for the other's protection, is liable to that other person for physical harm caused to him by failure to use reason-

*Stanturf v. Sipes,* 447 S.W.2d 558, 561–62 (Mo.1969)). Our case law further supports the concept that one who acts voluntarily or otherwise to perform an act, even when there was no duty to act originally, can be held liable for the negligent performance of that act. *See id.*

■■■ EMT argues that Passenger merely asserted that Driver should have made certain that she was seat belted, which was insufficient for a jury to reasonably infer Driver or EMT owed her a legal duty to do so. We disagree. Though EMT is correct in asserting that it owed Passenger no statutory duty under section 307.178, we find that she presented substantial evidence to establish that EMT owed her a common law duty to "make certain" she was seat belted. This common law duty was evidenced by the numerous references in the record suggesting that Driver voluntarily assumed a duty to make certain Passenger was seat belted.

At trial, Driver testified that he had worked for EMT for about two years and understood that he would be transporting mentally handicapped persons. He was trained by an employee of EMT who had explained to him that all the passengers should wear seat belts and "you have to make sure they do." Driver explained that all his passengers knew how to put on their seat belts, but that he made sure they did by first telling them to put them on and then checking that they did so. He said that he would watch the passengers while he was loading them into the van to make sure they were putting on their seat belts. He also said he would check in the van's rear view mirror to see if all the passengers were seat belted, especially because the passengers were all mentally handicapped to some extent.

Driver agreed that it was his "responsibility to check and make sure" that the passengers were seat belted, but that on the day of the accident he was unsure whether Passenger was wearing her seat belt because he could not see her seat belt by looking in his rear view mirror. He recalled that on that day he had "hollered back" to ask if everybody was wearing their seat belts, and all the passengers had responded that they were. He stated that he would have made Passenger put on her seat belt if he had known she did not have it on. He agreed that it was not his job to physically seat belt the passengers because most of them could do that themselves, but he further acknowledged that his job "was to tell them to put [on their seat belts] because, like children, they need[ed] to be told [to do so]" and that he "was to check and make sure they put it on."

Distinguishing the facts of Passenger's case from a case in which the defendant was found not to have assumed a duty is helpful in understanding Driver's assumption of a duty in this case. In *Winn ex rel. Winn v. Pollard,* a tractor driver who was injured in a rear-end collision brought a negligence action against the tractor's owner. 62 S.W.3d 611, 612–14 (Mo.App. 2001). The tractor driver alleged that when the owner had begun to follow behind the tractor in order to prevent such a collision he had assumed the duty to continue to follow the tractor until it safely reached its destination. *Id.* at 614. The court, however, found that the tractor owner had not assumed that duty because: (1) he only sometimes followed the tractor to prevent such collisions, but did not every time; (2) he and the driver had not discussed the subject of him following the

---

able care in rendering the voluntary service if: (1) his failure increased the other's risk of harm or (2) the other's harm was suffered because he relied on the voluntary service undertaken.

tractor; (3) there was no evidence presented that he had followed the tractor on any public roadway on the day of the collision, but rather that he had done so only in the driveway; and (4) there was no evidence that the driver knew the owner was following him or that he relied on him for his safety. *Id.* at 615.

The facts from *Winn* are readily distinguishable from the facts elicited in this case. Driver thought it was his job to make sure the passengers were seat belted. He stated that he would tell them to put on their seat belts while loading the van and then check in the mirror to see that they were seat belted. He did not state that he believed his job only required that he did this sometimes, but rather his testimony suggested this was his routine for making sure the passengers were seat belted. He further testified that if he knew a passenger was not seat belted he would make them put it on before he drove, and if a passenger would remove the seat belt en route he would have to tell them to put on the seat belt. Further, there was testimony suggesting Driver believed that the passengers relied on him to remind them to wear their seat belts because, like children, they needed to be told. He admitted multiple times that he believed it was his job to "make sure" the passengers were seat belted, and he admitted he was unsure if Passenger was seat belted on the day of the accident.

Based on Driver's testimony and in light of our standard of review, we find Passenger presented substantial evidence to establish that EMT assumed a duty to Passenger to "make certain" she was seat belted.

EMT argues, however, that even if it had a duty to ensure Passenger was seat belted, that duty was satisfied because she knowingly chose to remain unbelted on the day she was injured. It points to *Worley v. Tucker Nevils, Inc.* for the proposition that a passenger in a motor vehicle owes a duty of care to himself in that if he knows of a danger, and has an opportunity to control or influence the situation for safety, he is negligent if he fails to warn the driver of the situation. 503 S.W.2d 417, 421 (Mo. banc 1973). In this case, we are aware of Passenger's low I.Q. The issue of Passenger's responsibility to care for herself, however, was dealt with through EMT's submission of a comparative fault theory to the jury, and the jury subsequently assessing 20 percent of fault to Passenger for her injuries. Her duty as a passenger did not negate the duty EMT assumed to "make sure" she was seat belted.

The trial court did not err in denying EMT's motions for judgment notwithstanding the verdict and for new trial because Passenger presented a submissible case for negligence on the theory that EMT failed to make certain she was seat belted. EMT's first point is denied.

### Was Custom and Practice Testimony Inadmissible?

EMT next argues that the trial court erred in overruling its objection to the testimony of Diane Dilks ("Witness") in that she was allowed to testify regarding the custom and practice in the transportation industry, and her personal custom and practice, regarding seat belting mentally handicapped passengers. EMT asserts that Witness, as a non-expert witness, should not have been permitted to give such testimony because it was based on the practice of a single company and such testimony would normally be admissible only if given by an expert witness. We disagree.

The standard of review for whether Witness was qualified to testify regarding the industry custom and practice related to

transporting handicapped persons is abuse of discretion. *Davis v. Gatewood*, 299 S.W.2d 504, 511 (Mo.1957). Under this standard, we will reverse the trial court's decision only in extreme cases where it improperly exercised its discretion. *Id.* We will find an abuse of discretion when the trial court's ruling suggests a lack of careful consideration because it is against the logic of the circumstances or is so unreasonable or arbitrary as to shock our sense of justice. *Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 480 (Mo.App. 2001).

A custom is an ordinary or usual manner of doing something. *Davis*, 299 S.W.2d at 509. What is claimed to be a custom must be shown to amount to a definite, uniform, and known practice under certain definite and uniform circumstances in order to be sufficient to submit that issue to the jury. *Id.* To testify regarding the existence of a custom it should appear that a witness possesses knowledge of the custom and can be examined to show how that knowledge was acquired. *Id.* at 510 (internal citations omitted). A witness, however, is not qualified to testify to the existence of the custom if her knowledge of the custom is based only on the practice of certain individuals. *Id.* (internal citations omitted). If a witness admits she has no knowledge of the subject matter, she should be disqualified from testifying on that subject. *Id.*

Even when the evidence will not show a uniform general custom, however, it may be "admissible as a generally followed practice tending to show the standard of care exercised by ordinarily prudent persons" in performing the task at

issue. *Id.* at 511. Although a custom cannot be said to be definitive of a standard of reasonable care, it can be a reasonable basis for the contention that what is ordinarily done by persons generally engaged in a similar activity is relevant to show what an ordinarily careful person would do under the same circumstances. *Wright v. Chicago, Burlington & Quincy R.R. Co.*, 392 S.W.2d 401, 405 (Mo.1965).

At trial, EMT objected to Witness testifying about the practice and custom in the transportation industry related to seat belting handicapped passengers. Passenger argued that Witness's testimony would help illustrate the industry's custom by mirroring the testimony given by Driver and the testimony of other witnesses regarding directing passengers to put on their seat belts. The court warned, however, that it would not allow Witness to give such testimony based only on her individual standards or experience.[7] Witness was thereafter excused, but was later called back to the stand to testify. During that testimony, Passenger laid the foundation the court required to overcome the objection of EMT that Witness's testimony merely reviewed her own usage and practice, not the custom of the industry. Passenger also presented the testimony of EMT's president to support Witness's testimony. EMT's president testified that drivers were trained to tell passengers to put on their seat belts, but were not trained to make sure the seat belts were fastened.

EMT points to *Swindell v. J.A. Tobin Construction Co.* to support its contention that Witness's testimony should not have been admitted as proof of the custom and

---

7. The trial court relied on a medical malpractice case, *Hurlock v. Park Lane Medical Center, Inc.*, in giving this warning, but its admonition followed more closely the decision in *Davis*, which held that the witness's testimony should have been excluded because it was based only on the practice of certain individuals. *Hurlock*, 709 S.W.2d 872 (Mo.App.1985); *Davis*, 299 S.W.2d at 510–11.

practice in EMT's industry. 629 S.W.2d 536 (Mo.App.1981). In *Swindell*, the plaintiff was injured by a rock propelled through her windshield after she went through a construction zone where signs were weighted by rocks. *Id.* at 540. Plaintiff wished to show that the construction company should have weighted the signs with sandbags, and attempted to present the testimony of two former employees of the company. *Id.* at 541, 544. The trial court, however, excluded the employees' testimony that was offered for the purpose of establishing custom and practice in their industry. *Id.* at 544. The appellate court found no error in the exclusion of the testimony because the employees did not have personal knowledge of the particular construction zone at issue and there was no evidence it was similar to the job sites with which the employees were familiar. *Id.* at 544–45.

The facts in *Swindell*, however, are readily distinguishable from this case. Witness testified that she had personal experience transporting Passenger and other handicapped persons because she had transported them to Lafayette Industries when she was a driver for Bi–State. She testified that she worked for Bi–State for four or five years. When she was driving handicapped passengers she made sure they were seat belted before driving them. She also recalled that Passenger had to be told to put on her seat belt. Witness agreed that she was aware of the custom and practice in the transportation industry for transporting handicapped persons, both through her own job and by observing other drivers transporting Lafayette Industries employees during the four to five years she worked for Bi–State. Over EMT's objection, the trial court allowed Witness to testify that the custom and practice in the industry was to help handicapped passengers board the van, tell

them to put on their seat belts, and check to be sure they were secure.

Considering our standard of review, we find no error in the trial court overruling EMT's objection to Witness's testimony regarding the industry custom and practice of transporting handicapped passengers. Her testimony was based on her experience and observations in transporting Passenger and other employees of Lafayette Industries. Her testimony was based also on her observations of other drivers of handicapped passengers during her four to five years working in the industry. She professed knowledge regarding the industry's custom and was able to be cross-examined about that knowledge. We do not find that the trial court's allowing Witness's testimony was so unreasonable or arbitrary as to warrant a finding of error on this point. EMT's second point is denied.

### Was Instruction 6 Improper?

EMT's third argument on appeal asserts that the trial court erred in giving Instruction 6, Passenger's verdict director, to the jury because it incorrectly stated the law as to the existence of a duty to "make certain" that Passenger was seat belted. It also alleges the trial court committed error on these same grounds by presenting the corresponding verdict form to the jury.

EMT's challenge in this point mirrors its assertions in its first point that Passenger failed to show that it owed her a duty to "make certain" she was seat belted. Where the sufficiency of the evidence to support the giving of an instruction is questioned, we view the evidence in the light most favorable to the submission of the instruction. *Hudson v. Whiteside*, 34 S.W.3d 420, 427 (Mo.App.2000). So long as an instruction is supportable on any theory, it is not improper, but each element of a verdict director must be sup-

ported by substantial evidence. *Oldaker v. Peters,* 817 S.W.2d 245, 251 (Mo. banc 1991). Reversal of a jury verdict on grounds of an instructional error is only available if the appellant shows that the instruction misdirected, misled or confused the jury and thereby prejudiced the appellant. *Mast v. Surgical Servs. of Sedalia, L.L.C.,* 107 S.W.3d 360, 372 (Mo.App.2003). Additionally, the prejudice caused must be overwhelming to a degree of confusing or misleading the jury. *Id.* at 374.

Appellants rely on *M.C. v. Yeargin & Marriott International Corp.* for their proposition that Instruction 6 should not have been given to the jury because EMT had no duty to "make certain" Passenger was seat belted. 11 S.W.3d 604 (Mo.App. 1999). In *Yeargin,* the court found the instruction was defective because it found the defendants did not owe the duty the instruction submitted. *Id.* at 616. In contrast, as discussed in our resolution of EMT's first point, EMT assumed a duty to Passenger to "make certain" she was seat belted. The trial court did not err in presenting an instruction based on that duty to the jury. Instruction 6 and its corresponding verdict form did not mislead or confuse the jury regarding EMT's duty

and did not prejudice EMT. EMT's third point is denied.

### Was Passenger Entitled To Prejudgment Interest?

Passenger cross-appeals, arguing that she should have been awarded prejudgment interest on the entire amount of the verdict in her favor.

After reducing the verdict for the fault assessed to Passenger, the court entered a judgment in her favor for $2.8 million. EMT and Passenger both filed post-trial motions to amend the judgment.

Passenger filed a motion to amend the judgment pursuant to section 408.040(2).[8] Section 408.040 allows the recovery of prejudgment interest where the amount of a judgment exceeds a pre-trial settlement demand made in compliance with the statute. Passenger's motion to amend the judgment asserted that she was entitled to prejudgment interest on the $2.8 million verdict because that verdict was greater than the $2.5 million settlement demand she had submitted to EMT.

EMT's motion to amend the judgment, however, asserted that the judgment should be reduced by $960,000, the amount of money Passenger received pursuant to an agreement made under section 537.065,[9]

---

8. Section 408.040(2) states:
 In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier. Nothing contained herein shall limit the right of a claimant, in actions other than tort actions, to recover prejudg-

ment interest as otherwise provided by law or contract.

9. In relevant part section 537.065 states:
 Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer

in which she agreed to limit her recovery to the specific insurance proceeds provided in the agreement. In consideration for her promise to limit execution, she was to be paid $960,000.[10] The section 537.065 agreement, which was dated May, 2002, stated that Passenger acknowledged that the payment of the $960,000 would "be applied to any future judgment or settlement made or entered in this case." EMT asserts that this language shows that the $2.8 million verdict should be reduced by the $960,000 paid to Passenger prior to trial, thereby resulting in a verdict in her favor of $1.84 million. Because Passenger's settlement demand was $2.5 million, EMT contends her claim for prejudgment interest under section 408.040(2) would be defeated.

After post-trial motions were heard, the trial court entered an order granting EMT's motion to amend the judgment to $1.84 million, and denied Passenger's motion to amend because the amended judgment amount was now less than her settlement demand and no prejudgment interest should be added. The trial court issued a memorandum opinion explaining its decision to grant EMT's motion to amend the verdict, citing *Amador v. Lea's Auto Sales & Leasing, Inc.* for the proposition that "advance payments made to the plaintiff must be deducted from the jury's award prior to calculating prejudgment interest." 916 S.W.2d 845, 855 (Mo.App.1996).

Passenger argues in her cross-appeal that the trial court erred in granting EMT's post-trial motion to amend the judgment because the trial court improperly reduced the judgment by the amount of a pretrial settlement made under section 537.065. Passenger asserts that the trial court should have instead: (1) entered

a judgment in accordance with the verdict in her favor for $2.8 million; (2) added prejudgment interest on that amount pursuant to section 408.040(2); and (3) then granted EMT a partial satisfaction for the amount of the pretrial settlement.

We agree with Passenger's assertions that this case presents an issue of first impression on the relationship between sections 537.065 and 408.040. Neither the parties, nor we, found any case law directly on point to the issues presented in this cross-appeal. *Amador*, on which the trial court relied in granting EMT's motion to amend the judgment, can be easily distinguished from this case. In *Amador* the plaintiffs conceded that the trial court erred in not deducting the payment received prior to trial from the verdict before prejudgment interest was calculated. 916 S.W.2d at 855. Passenger has made no such concession in this case. Further, our reading of *Amador* gives us no indication of the type of payments the plaintiff in that case received prior to trial, and certainly there is no indication that the prior payments were made pursuant to section 537.065. For these reasons, we do not find that *Amador* required the trial court in this case to deduct the $960,000 Passenger received under the section 537.065 agreement from the verdict in her favor before calculating whether she was entitled to prejudgment interest under 408.040(2).

 Although there is no clear precedent to follow in reaching our decision in this cross-appeal, we have carefully reviewed the statutory language at issue and have weighed the public policies and precedent related to sections 408.040 and 537.065. Although the section 537.065 agreement that Passenger signed acknowl-

---

which insures the legal liability of the tortfeasor for such damage....

10. She was paid $930,000 by EMT's insurer in June 2002, and $30,000 by EMT's co-defendant's insurer in September 2002.

edged that the payment of the $960,000 would "be applied to any future judgment or settlement made or entered in this case," it is not clear if this sum was to be deducted before or after the court considered Passenger's claim for prejudgment interest under section 408.040(2).[11] EMT asserts that this language shows that the $2.8 million verdict should have been reduced by the $960,000 paid to Passenger prior to trial, thereby resulting in a verdict in her favor for $1.84 million, which would defeat her claim for prejudgment interest.

Section 537.065, however, is silent as to how pre-trial settlements entered pursuant to that section might effect eventual judgments subject to prejudgment interest under section 408.040(2). Passenger correctly asserts that nothing in section 537.065, or in the agreement she entered into under that section, limits her ability to recover prejudgment interest under section 408.040(2). We agree with Passenger that the issue of whether she is entitled to prejudgment interest under section 408.040(2) should be decided without regard to any payments she received prior to trial under the section 537.065 agreement.

■ An award of prejudgment interest serves two public policies: (1) to compensate for the true cost of money damages incurred, and (2) to promote settlement and to deter unfair benefit from the delay of litigation where liability and damages are fairly certain. *Larabee v. Washington,* 793 S.W.2d 357, 360 (Mo.App.1990), *overruled on other grounds by, Emery v. Wal–Mart Stores,* 976 S.W.2d 439 (Mo.1998).

Given the policy concerns associated with awarding prejudgment interest under

section 408.040(2) we find that it is most appropriate to separate the application of sections 408.040(2) and 537.065 into a two-step process. First, we determine whether the plaintiff was entitled to prejudgment interest under section 408.040(2). If the jury's verdict exceeded the settlement demand made pursuant to section 408.040(2), we next determine what amount of prejudgment interest is required under the statute. Although prejudgment interest is normally calculated on the entire amount of the judgment, public policy suggests that we should credit defendants for payments made to plaintiffs prior to trial so that plaintiffs do not, in effect, collect interest twice on the prior settlement.

In this case, Passenger was clearly entitled to prejudgment interest under section 408.040(2) because the verdict in her favor exceeded her settlement demand. Passenger, however, received $960,000 in 2002 that she agreed would be applied to any future judgment or settlement. Because Passenger could have been earning interest on the money paid to her pursuant to the section 537.065 agreement as soon as it was in her possession, she suffers no harm if we apply the $960,000 payment to reduce the $2.8 million verdict before determining the amount of prejudgment interest that should be calculated in this case. Additionally, applying the payment in this manner does not defeat the policies of section 408.020.

Thus, our disposition of the motions to amend the judgment in this case is as follows:

---

11. While we see nothing in section 537.065 that would prohibit parties from contracting regarding the effect any payments made prior to trial under this section might have on the availability of prejudgment interest under section 408.040(2), nothing in the agreement between Passenger and EMT addresses this issue. Further, this case is complicated in that the parties made no record of their discussions relating to their section 537.065 agreement or their motions to amend the judgment.

(1) Passenger is entitled to prejudgment interest under section 408.040(2) because the verdict in her favor exceeded the settlement demand she made pursuant to this section;

(2) Before calculating the amount of prejudgment interest owed, the settlement money paid to Passenger prior to trial, $960,000, should be applied to reduce the verdict in her favor so that she does not receive a windfall of interest on that amount;

(3) The verdict in Passenger's favor was for $2.8 million. We subtract from that verdict the $960,000 settlement she received prior to trial. The remaining amount is $1.84 million and this is the figure on which prejudgment interest under section 408.040 should be calculated.

We find the trial court erred in denying Passenger's motion to amend the judgment and in granting EMT's motion to amend the judgment. We reverse the court's order related to these motions and remand the case for calculation of prejudgment interest in accord with our decision. The judgment entered on the jury's verdict in favor of Passenger is affirmed in all other respects.

GARY M. GAERTNER, SR., P.J., and ROBERT G. DOWD, JR., J., concur.