

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| CARRIE L. GRUHN and IZECK K. McCOWN, by next friend CARRIE L. GRUHN, | ) ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | WD87371 |
| JOSEPH G. SCHWERMER, | ) ) | Filed: April 1, 2025 |
| Defendant, | ) ) | |
| and | ) ) | |
| JOSHUA R. ELAM, | ) ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cooper County
The Honorable Jeff A. Mittelhauser, Judge**

**Before Division Two: Janet Sutton, P.J., and
Alok Ahuja and Mark D. Pfeiffer, JJ.**

Carrie L. Gruhn and Izeck K. McCown (collectively "Plaintiffs") asserted wrongful-death claims against Joseph Schwermer and Joshua Elam. Gruhn is the mother, and McCown the child, of a woman killed in an accident involving an all-terrain vehicle which Schwermer was driving, and in which Elam was a passenger. The circuit court dismissed Plaintiffs' wrongful-death claim against

Elam for failure to state a claim; the court later approved a settlement of their claim against Schwermer.  Plaintiffs appeal, challenging the dismissal of their claim against Elam.  We affirm.

## Factual Background

On May 1, 2020, Schwermer was operating a 2017 Polaris Razor all-terrain vehicle (an "ATV") in Pettis County.  The ATV drove off an embankment and crashed.  At the time of the accident, the Decedent was sitting on Elam's lap in the passenger seat of the ATV, and was not wearing a seatbelt.  Decedent died as a result of the injuries she suffered in the accident.

Gruhn and McCown filed this wrongful death action against Schwermer in the Circuit Court of Pettis County on June 21, 2022.  On the same day, they filed a motion for change of venue pursuant to Supreme Court Rule 51.03.  The circuit court granted the motion for change of venue on September 7, 2022, and transferred the case to the Circuit Court of Cooper County.

After taking the depositions of Schwermer, Elam, and the other surviving passenger of the ATV, Plaintiffs moved to amend their petition to assert a wrongful death claim against Elam.  The circuit court granted Plaintiffs leave to file their amended petition on March 14, 2023.  Count II of the amended petition, which asserted a claim against Elam, alleged that, "[w]hile riding on the ATV Joshua R. Elam was holding [Decedent] by her waist."  The amended petition alleged that Elam was negligent in the following respects:

> 5.     The loading of the 2017 Polaris Razor and the death of [Decedent] was a direct result of Joshua R. Elam's negligence in that:
>
> > a)     He undertook to render services to [Decedent] by encouraging and allowing her to ride on his lap without a seat belt.

2

> b) He undertook services by encouraging and allowing [Decedent] to ride on his lap or the passenger seat where he was seated without a seat belt and she relied upon Joshua R. Elam to protect her from ejectment and injury.
>
> c) [Elam] undertook to render services in assisting [Decedent] in loading and riding upon the 2017 Polaris Razor, but failed to allow her access to the seat belt and thus increased the risk she would be injured as a result of the crash.
>
> d) [Decedent] relied upon Joshua R. Elam's undertaking of services to protect her.

Elam was served with Plaintiffs' amended petition on April 26, 2023. He filed a motion to dismiss, and an answer, on June 22, 2023, more than thirty days later. Elam's motion to dismiss argued that, because he and the Decedent were fellow passengers in the ATV, he did not owe her any duty of care. Plaintiffs responded to the substance of Elam's motion; in addition, they moved to strike the motion to dismiss as untimely under Rules 55.25(a) and 55.27(a). In response, Elam asserted that his failure to timely respond to Plaintiffs' amended petition was the result of excusable neglect. Elam asked the court to enlarge his time to respond pursuant to Rule 44.01(b), and treat his motion to dismiss as timely filed.

The circuit court held a hearing on Elam's motion to dismiss, and Plaintiffs' motion to strike the motion to dismiss, on August 28, 2023. A docket entry indicated that both motions were taken under advisement. The circuit court granted Elam's motion to dismiss in a judgment entered on September 11, 2023; the judgment found that "no duty on the part of defendant Elam has been plead." The court's order did not separately address the timeliness issue.

Following the dismissal of their claim against Elam, Plaintiffs reached a settlement of their claim against Schwermer. The circuit court approved the

settlement in a Final Judgment entered on June 27, 2024. Plaintiffs filed their Notice of Appeal on July 19, 2024.

## Discussion

Plaintiffs' appeal challenges the circuit court's dismissal of their negligence claim against Elam. Plaintiffs assert two Points on appeal. In their first Point, they contend that the circuit court should not have considered the merits of Elam's motion to dismiss, because the motion was untimely. In their second Point, Plaintiffs argue that they adequately alleged that Elam owed Decedent a duty of care, because their amended petition alleged that Elam voluntarily undertook to render services to Decedent which he should have recognized were necessary to her protection.

### I.

"Before reaching the merits of [Plaintiffs'] appeal, this Court must first determine whether the appeal was timely filed under the appropriate statutory scheme and th[e] [Supreme] Court's rules." *Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717, 719 (Mo. 2016).

Elam argues that Plaintiffs' appeal is untimely, because the circuit court entered its judgment dismissing Plaintiffs' claim against Elam on September 11, 2023, yet Plaintiffs did not file their notice of appeal until July 19, 2024.

Elam's jurisdictional argument rests on a fundamental misunderstanding of principles governing the finality of judgments. Supreme Court Rule 74.01(b) provides:

> **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action . . ., or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of

4

the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

The circuit court's September 11, 2023 judgment did not resolve Plaintiffs' claim against Schwermer, the ATV's driver. The judgment was accordingly not final, because it did not "adjudicate[e] all the claims and the rights and liabilities of all the parties." Moreover, the September 11, 2023 judgment was not appealable as a *partial* final judgment, because the court did not make the "express determination" required by Rule 74.01(b). Therefore, because Rule 74.01(b) provides that the September 11, 2023 judgment remained modifiable, the judgment was merely interlocutory. *See Sanford*, 490 S.W.3d at 719. The judgment only *became* final upon "the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" – which occurred when the Plaintiffs' settlement with Schwermer was approved by the court.

The circuit court entered its Final Judgment approving Plaintiffs' settlement with Schwermer on June 27, 2024. Under Rule 81.05(a)(1), the judgment became final thirty days thereafter. Plaintiffs' Notice of Appeal, filed on July 19, 2024, was premature, but is "considered as filed immediately after the time the judgment becomes final for the purpose of appeal." Rule 81.05(b). Plaintiffs' appeal was timely.

5

## II.

In Plaintiffs' first Point, they argue that the circuit court erred in granting Elam's motion to dismiss, because the motion was filed outside the thirty-day limit specified in Rules 55.25(a) and 55.27(a).

Plaintiffs' cursory argument on Point I wholly ignores, however, that Elam asked the circuit court to enlarge the time for filing his response to the amended petition under Rule 44.01(b). Rule 44.01(b) provides in relevant part:

> **(b) Enlargement**. When by these rules . . . an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . (2) upon notice and motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .

The circuit court's dismissal judgment did not expressly find excusable neglect, or expressly state that the court was extending the time for Elam to respond to the Plaintiffs' amended petition. But nothing in Rule 44.01(b)(2) requires the court to make an explicit finding or ruling in order to exercise its authority under the Rule. By ruling on the merits of Elam's motion to dismiss, in the face of the Plaintiffs' timeliness arguments and Elam's invocation of Rule 44.01(b)(2), we presume that the circuit court found excusable neglect and granted Elam an enlargement of time within which to respond to the amended petition.

Plaintiffs make no argument that Elam failed to properly invoke Rule 44.01(b)(2), or that the circuit court abused the discretion afforded by the Rule when it chose to address the merits of Elam's untimely dismissal motion. Given that Plaintiffs have failed to acknowledge, much less challenge, the obvious basis on which the circuit court considered Elam's untimely motion, we deny Point I.

6

**III.**

In their second Point, Plaintiffs contend that the circuit court erred in granting Elam's motion to dismiss, because Elam voluntarily assumed a duty to the Decedent when he undertook to render protective services to her.

"We review the trial court's grant of a motion to dismiss de novo." *Loomis v. Bowers*, 645 S.W.3d 633, 636 (Mo. App. W.D. 2022) (citation omitted). "A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition." *Cope v. Parson*, 570 S.W.3d 579, 583 (Mo. 2019) (citation omitted). "We review the petition to determine if the plaintiff has alleged facts that meet the elements of a recognized cause of action or of a cause that might be adopted in that case." *Hartman v. Logan*, 602 S.W.3d 827, 835–36 (Mo. App. W.D. 2020) (cleaned up). "The Court does not weigh the factual allegations to determine whether they are credible or persuasive." *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. 2019).

Missouri is a fact pleading state. *Id.* at 425. "[T]he facts that must be pleaded are the ultimate facts, not evidentiary facts. Ultimate facts are those the jury must find to return a verdict for the plaintiff." *Id.* (cleaned up). "To determine the propriety of a dismissal for failure to state a claim, we must first consider the elements of each of the causes of action to determine what facts needed to be alleged in order to sufficiently state a claim." *McConnell v. W. Bend Mut. Ins. Co.*, 606 S.W.3d 181, 189 (Mo. App. W.D. 2020).

"'[T]he essential factual elements of a claim for personal injury due to negligence are – negligence (the failure of defendant to perform a duty to protect plaintiff from harm), causation, and injury.'" *Wright v. Armijo*, 668 S.W.3d 261, 267 (Mo. App. S.D. 2023) (quoting *Schaefer v. Accardi*, 315 S.W.2d 230, 233

7

(Mo. 1958)).  Elam's motion to dismiss contended that Plaintiffs' amended petition failed to allege a legally recognized duty owed by Elam to the Decedent. Whether Elam owed a duty to the Decedent is purely a question of law.  *Peters v. Wady Indus.*, 489 S.W.3d 784, 793-94 (Mo. 2016).

Elam was merely a passenger in the ATV in which the Decedent was also riding.  "Ordinarily, a passenger in an automobile is only under a duty to exercise ordinary care for his own safety. . . .  This duty, however, is a duty the passenger owes only to himself and not to the driver or any other person." *Gandy v. Terminal R.R. Ass'n of St. Louis*, 623 S.W.2d 49, 51 (Mo. App. E.D. 1981) (citing *Happy v. Blanton*, 303 S.W.2d 633, 638 (Mo. 1957)); *see also*, *e.g.*, *Safe Auto Ins. Co. v. Hazelwood*, 404 S.W.3d 360, 366 (Mo. App. S.D. 2013) ("Generally speaking, '[a] guest passenger in an automobile is required to exercise ordinary care for his own safety.'" (quoting *Choate v. Natvig*, 952 S.W.2d 730, 734 (Mo. App. S.D. 1997)).

Although automobile passengers generally owe no duties to others, Plaintiffs argue that Elam voluntarily assumed a duty to keep the Decedent safe. Plaintiffs rely on Restatement (Second) of Torts § 323 (1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a)     his failure to exercise such care increases the risk of such harm, or
> >
> > (b)     the harm is suffered because of the other's reliance upon the undertaking.

The Missouri Supreme Court has adopted Restatement § 323 as a matter of Missouri common law. *See, e.g.*, *Junior Coll. Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 451 (Mo. 2004); *Trader v. Blanz*, 937 S.W.2d 325, 328 (Mo. App. W.D. 1996).

"The rule stated in [§ 324A] parallels the one stated in § 323" – the difference being that § 323 addresses "the liability of the actor to the one to whom he has undertaken to render services," while § 324A "deals with the [actor's] liability to third persons." Restatement (2d) of Torts § 324A, Comment a (1965). Like their adoption of § 323, Missouri courts have also applied § 324A in tort cases. *See, e.g.*, *Doe by & through Doe v. Ozark Christian Coll.*, 579 S.W.3d 220, 224 (Mo. App. S.D. 2019); *Berliner v. Milwaukee Elec. Tool Corp.*, 501 S.W.3d 59, 67 (Mo. App. E.D. 2016). Thus, caselaw interpreting § 324A is relevant in assessing whether Plaintiffs' amended petition alleged facts establishing a legally enforceable duty owed by Elam to the Decedent.

There are multiple fundamental problems with Plaintiffs' reliance on Restatement § 323 as the basis for their claim against Elam. First,

> whether [a defendant] assumed an obligation or intended to render services for the benefit of [a plaintiff] is an elemental fact ("threshold elemental fact") that Plaintiff must plead and prove in order to cross the threshold for establishing [the defendant's] section [323] duty of care . . . .

*Doe*, 579 S.W.3d at 224. To establish a duty under § 323, the Plaintiffs were required to plead, and prove, "an undertaking whose unambiguous object is to benefit another and which would not have been performed primarily for the actor's purposes." *Id.* at 227 (Lynch, J., concurring) (cleaned up; quoting *Smith v. Allendale Mut. Ins. Co.*, 303 N.W.2d 702, 711 (Mich. 1981)).

9

Plaintiffs' amended petition does not identify *any* service which Elam undertook to provide to the Decedent for her protection. Instead, the amended petition alleges only that Elam "encourage[ed] [the Decedent] and allow[ed] her to ride on his lap without a seat belt," and that he "assist[ed] [Decedent] in loading and riding upon" the ATV. While the amended petition alleges that Elam encouraged the Decedent to ride on the ATV, and assisted her in getting aboard, it does not allege that he undertook *to do anything* to keep her safe. Nor does the amended petition allege that the Decedent's injuries and death were caused by Elam's failure to properly perform any protective actions he had undertaken.

We recognize that the amended petition also alleges that "[w]hile riding on the ATV Joshua R. Elam was holding [the Decedent] by her waist." The amended petition does not allege, however, that Elam was holding the Decedent for *her* benefit (whether to restrain her in the ATV, or for some other protective purpose). The amended petition also does not allege that the Decedent chose to ride in the ATV in reliance on any undertaking by Elam to hold her around the waist, or that Elam's failure to properly hold the Decedent caused or increased the risk of harm to the Decedent. Further, although the amended petition alleges that Elam "failed to allow [the Decedent] access to the seat belt," the petition does not allege that Elam had undertaken to provide her with access to the seatbelt; to the contrary, the amended petition explicitly alleges that Elam encouraged the Decedent to ride in the ATV "*without a seat belt*." (Emphasis added.) Without the identification of a service which Elam was undertaking to perform to keep the Decedent safe, on which the Decedent relied or which increased her risk of injury, and whose omission contributed to cause her death, the Plaintiffs have failed to

10

allege a "threshold elemental fact" essential to any recovery under Restatement § 323.

Plaintiffs' amended petition suffers from an additional flaw. To the extent that Plaintiffs contend that the Decedent suffered harm because of her reliance on Elam's undertaking to provide protective services, their amended petition fails to allege that Elam gave the Decedent an express assurance of her safety. In *J.M. v. Shell Oil Co.*, 922 S.W.2d 759 (Mo. 1996), the plaintiff was a customer at a service station operated by Dunn, which had been franchised from Shell Oil. *Id.* at 761. The plaintiff was criminally assaulted by third parties while patronizing the service station. *Id.* She argued that Shell could be held liable because it had undertaken to train its franchisee's employees, including on security matters, and had therefore assumed a duty enforceable under Restatement § 324A. *Id.* at 764. The Supreme Court found that plaintiff's reliance on § 324A failed, because she could not have relied on Shell's actions, where Shell had made no express assurance that Dunn's business invitees would be safe if Shell's training were followed:

> Another basis of direct liability claimed by plaintiff is that under Restatement (Second) of Torts § 324A (1965), Shell failed in its duty to "render services . . . necessary for the protection of a third person," when Shell undertook to train Dunn's employees. An undertaking to train employees of another, even in matters of security, is not equivalent to an undertaking to protect business invitees of the employer from crimes. It is conceivable that pursuant to § 324A, one who undertakes training for an employer may be directly liable under the "special circumstance" where the trainer gives an express assurance that business invitees of the employer will be safe. However, Shell's undertaking to provide training was not accompanied by its express assurance that Dunn's invitees would be safe. For that reason, this claim of direct liability fails.

*Id.* at 765 (citations omitted); *see also Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 287 n.7 (Mo. App. W.D. 1995) (claim against franchisor for injuries caused by criminal assault at a franchisee-operated restaurant, based on the franchisor's promotion of effective security measures at all of its franchised restaurants; concluding that "appellant's arguments do not support submission of his case to the jury under a Restatement 324A theory, as there is no express assurance of safety which appellant can point to which gave rise to a duty to protect him on the part of" the franchisor).

Plaintiffs' amended petition contains no allegation that Elam made any express assurance that the Decedent would be safe on the ATV. Given the lack of any such express assurance, Plaintiffs' claim under Restatement § 323 cannot be based on the contention that the Decedent's death was caused by her reliance on Elam's undertaking to perform services for her.

Plaintiffs argue that their Restatement § 323 claim is similar to the claim asserted in *Bowan v. Express Medical Transporters, Inc.*, 135 S.W.3d 452 (Mo. App. E.D. 2004). But the facts of the two cases are completely distinguishable. The plaintiff in *Bowan* had suffered encephalitis as a child. *Id.* at 455. As a result, she had physical disabilities; she also had "short-term memory problems[,] . . . an IQ of 74, and was described as having the mental abilities of a 12-year old." *Id.* The defendant had contracted with the Department of Mental Health to provide transportation for disabled individuals like the plaintiff. *Id.* Plaintiff was severely injured when the transport vehicle was involved in an accident; she was not restrained by a seatbelt at the time. *Id.*

The Eastern District held that the plaintiff had sufficiently established at trial that the transportation company had voluntarily assumed a duty to ensure that she was wearing a seatbelt, based on the principles stated in Restatement § 323. The Court described the relevant evidence as follows:

> At trial, Driver testified that he had worked for [the defendant] EMT for about two years and understood that he would be transporting mentally handicapped persons. He was trained by an employee of EMT who had explained to him that all the passengers should wear seat belts and "you have to make sure they do." Driver explained that all his passengers knew how to put on their seat belts, but that he made sure they did by first telling them to put them on and then checking that they did so. He said that he would watch the passengers while he was loading them into the van to make sure they were putting on their seat belts. He also said he would check in the van's rear-view mirror to see if all the passengers were seat belted, especially because the passengers were all mentally handicapped to some extent.
>
> . . . .
>
> . . . Driver thought it was his job to make sure the passengers were seat belted. . . . He did not state that he believed his job only required that he did this sometimes, but rather his testimony suggested this was his routine for making sure the passengers were seat belted. He further testified that if he knew a passenger was not seat belted he would make them put it on before he drove, and if a passenger would remove the seat belt en route he would have to tell them to put on the seat belt. Further, there was testimony suggesting Driver believed that the passengers relied on him to remind them to wear their seat belts because, like children, they needed to be told.

*Id.* at 458-59.

Thus, in *Bowan*, copious evidence established both that the transportation company's employee undertook to make sure that all passengers were properly restrained, but also that the passengers relied on the transportation company's

undertaking. In the present case, by contrast, Plaintiffs made no allegation that Elam undertook the obligation to make sure that the Decedent was adequately restrained in the ATV, or that she relied on Elam's undertaking in choosing to ride in the vehicle. *Bowan* does not justify reversal here.

Because Plaintiffs' amended petition failed to state a claim upon which relief could be granted, the circuit court did not err in granting Elam's motion to dismiss. Point II is denied.

## Conclusion

The circuit court's judgment is affirmed.

Alok Ahuja, Judge

All concur.

14