# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2383

_____

| | | |
|---|---|---|
| Bluehaven Funding, LLC, a Missouri Limited Liability Company; Kanich Development, LLC, a Missouri Limited Liability Company, | * * * * * | |
| Plaintiffs - Appellants, | * * | Appeal from the United States District Court for the Eastern |
| v. | * * | District of Missouri. |
| First American Title Insurance Company, a California Corporation Authorized to do Business in the State of Missouri, | * * * * * | |
| Defendant - Appellee, | * * | |
| Capital Title Company, Inc., | * * | |
| Defendant. | * | |

_____

Submitted: January 12, 2010
Filed: February 18, 2010

_____

Before MURPHY and BYE, Circuit Judges, and STROM,[1] District Judge.

_____

---

[1] The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

STROM, District Judge.

Bluehaven Funding, LLC and Kanich Development, LLC (collectively, "appellants") lost approximately $2.4 million in real estate loan proceeds as a result of doing business with Robert Hartmann d/b/a DHP Investments LLC ("Hartmann") and Capital Title Company ("Capital Title"). In an effort to recover the losses, appellants filed this lawsuit against First American Title Insurance Company ("First American"), alleging First American was vicariously liable for Capital Title's actions due to an agency relationship that existed between the parties, and First American was directly negligent for failing to monitor Capital Title's business. The district court[2] granted summary judgment in favor of First American on all claims. We affirm.

## I. BACKGROUND

First American is a California corporation authorized to do business in Missouri as a land title insurance company. On or about July 9, 1999, First American entered into a Policy Issuing Agency Contract (the "Agency Agreement") with Capital Title that named First American as "principal" and Capital Title as "agent." In relevant part, the Agency Agreement stated the following with regard to Capital Title's appointment as First American's agent, and the scope of Capital Title's authority pursuant to the appointment:

**APPOINTMENT**

1.      Principal hereby appoints Agent to act for, and in the name of, Principal in transacting title insurance business, but only for the purposes and in the manner specifically set forth in this contract and for no other purpose and in no other manner whatsoever. The authority hereby granted is subject to all of the limitations on the

---

[2] The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

scope of the Agency contained in this contract, the limitations and regulations imposed by the insurance laws of the State of Missouri and rules promulgated pursuant thereto.

**AUTHORITY**

2.    Agent is authorized to issue, in the name of Principal, title insurance commitments and policies (including endorsements hereto); provided, that:

a.  Each of them relates to land located in:

**COUNTIES OF: ST. LOUIS CITY AND COUNTY**. . .

From 2002 through 2004, appellants loaned approximately $2.4 million to Hartmann for the purpose of purchasing properties to be rehabbed and sold.  The funds were held in an escrow account at Capital Title, and all of the loan transactions were closed at Capital Title.[3]  Appellants understood that the loans would be secured by first deeds of trust on the properties Hartmann purchased.  With one exception, there is no evidence that Capital Title issued a First American title insurance commitment or policy to appellants as the insured to insure any of the loans, properties, or transaction at issue.[4]  Ultimately, Hartmann diverted funds in the escrow account to his own use, and when appellants sought to foreclose on properties for

---

[3] When Hartmann sold a property that was purchased with the loan proceeds, appellants instructed Capital Title to pay appellants the interest owed on the loan and hold the principal in the escrow account to be "rolled over" into a new loan for Hartmann to purchase another property.

[4] There is evidence that Capital Title issued a Land Title Insurance Company commitment for lender's title insurance with Bluehaven as the insured for certain land on Delmar Boulevard; Land Title Insurance Company is a wholly-owned subsidiary of First American.  There is also evidence that Bruce Hatrich, a prior co-owner of appellants, obtained a commitment for title insurance on additional properties, but Mr. Hatrich was not named as a party in this action.

which they supposedly held deeds of trust, they learned that for many of the properties their deeds of trust were not valid or lacked priority. Appellants claim Hartmann was able to misappropriate escrow funds, and they received effectively worthless deeds of trust because Capital Title mishandled escrow accounts and real estate closings.[5]

In November 2004, First American learned that Capital Title had bounced checks, and First American initiated an audit of Capital Title's accounts. As of January 14, 2005, First American's findings revealed that the aggregate amount of outstanding checks drawn on Capital Title's escrow account exceeded the balance on deposit in the escrow account by approximately $6.5 million. First American terminated its agency relationship with Capital Title and filed a receivership lawsuit. Capital Title ceased doing business in Missouri when all of its assets were seized and liquidated by a trustee for the benefit of creditors in the receivership proceeding.

In August 2006, appellants filed this action against First American.[6] The complaint contains 22 counts. The first 21 counts seek to hold First American vicariously liable for various claims against Capital Title for breach of contract, breach of fiduciary duty, and negligence based on allegations that Capital Title failed to (1) properly and timely record deeds of trust, (2) ensure full pay-offs of appellants' deeds of trust, (3) validate deeds of release, (4) verify satisfaction of pre-existing deeds of trust, and (5) properly maintain and disburse escrow funds. Count 22 asserts a claim for direct negligence against First American for failing to monitor and/or audit

---

[5] In September 2005, Peter Shaw, who was president of Capital Title, pled guilty to mail fraud and transportation of stolen money. In April 2009, Hartmann pled guilty to two counts of mail fraud.

[6] This action was originally filed in the Circuit Court for the City of St. Louis, Missouri against First American and Capital Title. First American removed the action to federal court based on diversity jurisdiction and the fraudulent joinder of Capital Title. Thereafter, the district court dismissed Capital Title from the lawsuit without prejudice for lack of service of process.

Capital Title's business. The district court granted summary judgment in favor of First American on all claims, finding in relevant part that (1) the vicarious liability claims failed because Capital Title did not have authority to act as First American's agent in performing the acts alleged in the complaint with respect to the transactions at issue, and (2) the direct negligence claim failed because First American did not owe appellants any duty to audit or monitor Capital Title's business.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* "[W]e may 'affirm the district court on any grounds supported by the record.'" *Duffy v. Wolle*, 123 F.3d 1026, 1035 n.5 (8th Cir. 1997) (quoting *Yowell v. Combs*, 89 F.3d 542, 544 n.4 (8th Cir. 1996)).

## III. DISCUSSION[7]
### A. Vicarious Liability Claims (Counts I-XXI of the complaint)

Appellants argue the district court erred when it found Capital Title did not have authority to engage in the activities alleged in the complaint. Specifically, appellants contend there is a genuine dispute as to whether Capital Title had express or implied authority to perform escrow and closing services.[8]

---

[7] This action is based on diversity jurisdiction, and therefore, state law governs issues of substantive law. *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 944 (8th Cir. 2001). The parties do not dispute that Missouri law applies.

[8] Appellants stipulated that they do not assert or rely on an apparent authority theory.

"A principal is responsible for its agents' acts and agreements that are within the agent's authority, whether the authority is actual or apparent." *Motorsport Mktg., Inc. v. Wiedmaier, Inc.*, 195 S.W.3d 492, 498 (Mo. Ct. App. 2006) (quoting *Sherman, Taff & Bangert, P.C. v. Clark Equip. Co.*, 133 S.W.3d 125, 127 (Mo. Ct. App. 2004)). "Actual authority may be express or implied." *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.*, 220 S.W.3d 350, 355 (Mo. Ct. App. 2007) (quoting *Nichols v. Prudential Ins. Co. of Am.*, 851 S.W.2d 657, 661 (Mo. Ct. App. 1993)). "Express authority is created when the principal explicitly tells the agent what to do[,] and [i]mplied authority consists of those powers incidental and necessary to carry out the express authority." *Id.* (quoting *Nichols*, 851 S.W.2d at 661) (internal quotation marks omitted). Whether a principal-agent relationship exists is a question of fact. *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 384 (Mo. Ct. App. 1999). The party asserting an agency relationship has the burden of proving the existence of the relationship and the scope of the agent's authority. *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.*, 932 S.W.2d 877, 879 (Mo. Ct. App. 1996).

Appellants' vicarious liability claims rely on the premise that Capital Title had authority to provide escrow and closing services as First American's agent. The district court appeared to find that Capital Title had authority to provide escrow and closing services for "insured transactions" – transactions in which a title insurance commitment or policy was issued, but Capital Title did not have authority to provide escrow and closing services for "uninsured transactions." Because the district court concluded that all of the transactions at issue were uninsured transactions, it found that Capital Title did not have authority to engage in the activities identified in the complaint. We agree with the district court's ultimate conclusion that Capital Title lacked such authority.

The Agency Agreement clearly and unambiguously defines the nature and scope of First American and Capital Title's agency relationship. Under the Agency

Agreement, Capital Title's authority to act as First American's agent is limited to those purposes specifically set forth in the Agency Agreement, and "for no other purpose and in no other manner whatsoever." The Agency Agreement specifically grants Capital Title authority to issue title insurance commitments and policies for specified land; the Agency Agreement does not specifically grant Capital Title authority to provide escrow and closing services. There is no evidence that First American manifested its express consent to grant Capital Title authority in addition to the authority granted in the Agency Agreement. Accordingly, there is no genuine dispute that the scope of Capital Title's express authority was limited to issuing title insurance commitments and policies and did not include the authority to provide escrow and closing services.

Appellants' argument that section 9 of the Agency Agreement somehow expands the scope of Capital Title's express authority is without merit. Section 9 provides in part:

> 9. Agent shall allow Principal to periodically inspect and audit Agent's escrow accounts and escrow files in those instances wherein Principal's commitments and policies are issued pursuant to said escrows. The frequency and extent of such inspections and audits shall be determined by Principal. . . .

Appellants contend that because the Agency Agreement gives First American the right to review Capital Title's escrow accounts and files in certain circumstances, First American must have expressly granted Capital Title the authority to act as its escrow agent. This logic contradicts the clear and unambiguous contract language and is not supported by the record.

Further, the record does not support a finding that Capital Title had implied authority to provide escrow and closing services. Appellants have not produced evidence from which a reasonable jury could conclude that providing escrow and

closing services was "incidental and necessary" to Capital Title's express authority to sell title insurance.

Appellants rely on *Coldwell Banker Relocation Services, Inc. v. TRW Title Insurance Co.*, 74 F.3d 1243, 1996 WL 5156 (8th Cir. Jan. 8, 1996) (per curiam) (unpublished), wherein the Eighth Circuit affirmed, in an unpublished, non-precedential opinion, a district court's determination that the title insurer was responsible for its agent's escrow activities. *Coldwell* is easily distinguishable from this case. In *Coldwell*, there was "ample evidence" that the title insurer knew the agent regularly performed escrow services at closings of transactions on which he had written a title insurance policy, and the title insurer had issued a closing protection letter. *Id.* at *1-2. Here, the record does not support a finding that First American knew Capital Title performed escrow services on behalf of First American, and there is no evidence that First American issued a closing protection letter for appellants in connection with any of the transactions at issue.

There is no genuine dispute that Capital Title lacked actual authority to provide escrow and closing services as First American's agent. The conduct alleged in the complaint falls outside the scope of Capital Title's authority, and the vicarious liability claims necessarily fail as a matter of law.[9] The district court's grant of summary judgment in favor of First American on appellants' vicarious liability is affirmed.

---

[9] The fact that Bluehaven obtained a title insurance commitment to insure funds used to purchase one of the properties listed in Counts I, II, and III is irrelevant to the validity of those claims because Counts I, II, and III seek to hold First American vicariously liable for Capital Title's failure to record deeds of trust – conduct that is outside the scope of Capital Title's actual authority.

**B. Direct Negligence Claim (Count XXII of the complaint**)

Appellants contend the district court committed a procedural error when it granted First American summary judgment on the direct negligence claim because First American did not move for judgment on the claim in the first instance. Appellants further argue that even if we review the merits of the claim, the district court erred when it found First American did not owe a duty to appellants. We address the second argument first because we find its resolution impacts the first argument.

In order to establish a negligence claim, a plaintiff must prove, inter alia, that the defendant had a duty to protect the plaintiff from injury. *Owens v. Unified Investigations & Scis., Inc.*, 166 S.W.3d 89, 92 (Mo. Ct. App. 2005). "A duty to exercise care can be imposed by a controlling statute or ordinance, assumed by contract, or imposed by common law under the circumstances of a given case." *Bowan v. Express Med. Transporters, Inc.*, 135 S.W.3d 452, 457 (Mo. Ct. App. 2004). In determining whether a duty exists in a particular case, Missouri courts consider several policy factors, including the foreseeability of the harm. *Id.* Whether a duty exists is a question of law. *Id.*

Appellants' negligence claim is based on the allegation that First American owed them a duty to monitor Capital Title's business, and specifically, Capital Title's escrow activities. Appellants point to the Agency Agreement, First American's performance of the Agency Agreement, and common law as possible sources of this duty. The district court properly found that, as a matter of law, First American did not owe appellants the type of duty alleged.

The Agency Agreement does not impose any duty on First American in favor of appellants. Appellants were not parties to the Agency Agreement. "Generally, a defendant who has contracted with another owes no duty to a plaintiff who is not a party to that agreement, nor can a non-party sue for negligent performance of the

contract." *Owens*, 166 S.W.3d at 92. This general rule of privity serves two purposes: (1) it protects the contractual parties from being exposed to unlimited liability, and (2) it prevents burdening the contractual parties with obligations they have not voluntarily assumed. *Id.* Missouri courts have made exceptions to the general rule when application of the rule "is not necessary to protect the contractual parties, or when it would produce results contrary to justice and public policy[.]" *Kaplan v. U.S. Bank, N.A.*, 166 S.W.3d 60, 70 (Mo. Ct. App. 2003).

In this case, appellants rely on a well-established exception to the privity rule for situations where negligent performance of a contract involves harm to third parties. *See id.* However, the exception does not apply here, as the facts of this case differ in several important respects from those cases in which Missouri courts have utilized the exception. First, the Agency Agreement does not obligate First American to review Capital Title's escrow accounts and files; rather, it simply gives First American the right to do so "periodically" and at times to "be determined by" First American. Second, nothing in the record supports a finding that appellants relied on the results of any potential reviews First American might undertake, or that First American understood that the reviews it might choose to perform would be for the benefit of third parties. Indeed, the Agency Agreement clearly and explicitly establishes the contrary, as it provides:

> The right of the Principal to periodically inspect and audit Agent's escrow accounts and escrow files shall not be construed by the Agent or any party dealing with Agent as an undertaking on the part of Principal to assume any responsibility or liability for the acts of or any errors or omissions of the Agent in the performance of Agent's duties as escrowee under any escrow agreement.

Finally, if we were to impose a duty on First American in this case, it would subject First American to excessive liability, as any purported duty to review Capital Title's

files cannot logically be circumscribed to a limited group. Based on these facts, the exception identified by appellants does not apply.

Our conclusion is not impacted by the fact that First American exercised its right under the Agency Agreement to review Capital Title's files. It is evident from the Agency Agreement and the remaining record that First American's right to review Capital Title's escrow files and accounts was for First American's own benefit and protection, and not for the benefit of any third party. Neither the Agency Agreement nor First American's performance of the Agency Agreement imposed any duty on First American in favor of appellants to review Capital Title's escrow files and accounts.

Similarly, we do not find that common law creates any such duty. Importantly, the Agency Agreement clearly disclaimed any duty to third parties, and as discussed above, Capital Title was acting outside the scope of its authority when it provided escrow and closing services to appellants. Since First American did not owe appellants a duty to review Capital Title's escrow and closing activities, appellants cannot establish an essential element of their negligence claim.

Aside from the merits, appellants also argue that the district court committed a procedural error when it granted judgment in favor of First American on the direct negligence claim. Appellants contend that because they were not afforded the opportunity to respond to First American's reply brief, we must remand this issue for further consideration by the district court. We disagree. The issue of whether a legal duty exists is a question of law, the issue has been fully briefed and argued by the parties, appellants have not identified any additional facts they would present to the district court that could alter the outcome, and the district court properly found that no duty exists. Any remand would be futile and a waste of judicial resources. Accordingly, we affirm the district court's grant of summary judgment in favor of First American on the direct negligence claim.

## IV. CONCLUSION

The district court's grant of summary judgment in favor of First American on all claims is affirmed.

_____