

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FIVE</u>

| | | |
|---|---|---|
| MICHAEL REDDICK, | ) | No. ED109672 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| v. | ) | Cause No. 17CG-CC00309 |
| | ) | |
| SPRING LAKE ESTATES | ) | Honorable Scott A. Lipke |
| HOMEOWNER'S ASSOCIATION, | ) | |
| MELVIN DOCKINS, and ACUITY, | ) | |
| A MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Respondents. | ) | Filed: May 17, 2022 |

**Introduction**

Appellant Michael Reddick ("Reddick") brought a wrongful death lawsuit against his parents, Jesse and Pat Reddick ("the Reddicks"), and their neighbor, Roger McCullough ("McCullough"), following his wife's fatal fall from a wall adjoining their properties. Reddick settled with the Reddicks and McCullough and filed amended petitions adding Respondents the Spring Lake Estates Homeowner's Association ("Association"), home inspector Melvin Dockins ("Dockins"), and Acuity, a Mutual Insurance Company ("Acuity"), as defendants.

Reddick raises three points on appeal. First, Reddick argues the circuit court erred in granting summary judgment to the Association because the Association had a duty to adequately light the subdivision. Second, Reddick argues the circuit court erred in granting Dockins's and

Acuity's motions to dismiss his Fifth Amended Petition ("Petition"). He argues the Petition stated a claim for Dockins's negligent inspection of McCullough's property where Susan Reddick ("decedent") fell; and a claim for Dockins's breach of a Section 537.065 agreement ("Agreement") with Reddick in which he agreed not to contest liability regarding the negligence claim.[1] He insists the negligence claim should not have been dismissed without first resolving the "threshold issue" of whether the Agreement prohibited Dockins and Acuity from contesting liability. Third, Reddick argues the circuit court erred in granting Acuity's motion to dismiss the Petition because Reddick may pursue a direct action against Acuity due to Acuity's intervention in the case, and the Petition stated a claim against Acuity for tortious interference with the Agreement.

We affirm the judgment of the circuit court.

### Facts and Procedural Background

Michael Reddick filed a wrongful death lawsuit against the Reddicks and McCullough on December 13, 2017. In his original petition, Reddick alleged that, on the night of December 30, 2016, the decedent fell off an unguarded and unlit three-foot high retaining wall near the border between the Reddicks' and McCullough's properties while walking her dog. Reddick found her injured on McCullough's driveway and called first responders. She was transported to the hospital, where she died. Reddick subsequently settled with the Reddicks and McCullough, and those claims are not at issue in this appeal.

### Facts Related to Point I

On November 12, 2018, Reddick filed a First Amended Petition naming the Association as a defendant. Reddick alleged that the Association was negligent in failing to adequately light the subdivision after it had assumed responsibility for providing lighting. On June 3, 2019, the

---

[1] All Section references are to the Revised Statutes of Missouri (2016), as supplemented, unless otherwise indicated.

2

Association moved for summary judgment and asserted uncontroverted material facts pursuant to Rule 74.04.[2] Reddick responded with additional material facts.

The undisputed facts are that the Association did not own or possess the retaining wall, which was on McCullough's property approximately two to four inches from the Reddicks' adjoining property. The Association never installed or maintained any lights on the Reddicks' or McCullough's property. Nor did it install or maintain lights on any other homeowner's private property.[3] The members of the Association discussed the sufficiency of the street lighting in the subdivision during meetings for more than four decades. The Association installed and maintained five streetlights in the subdivision at or near the subdivision entrance, common grounds, two different intersections, and the end of a street. The Association did not install or maintain any other streetlights. Each streetlight was attached to a utility pole extending the light toward the street. Each pole was located within a dedicated 50-foot-wide street right-of-way owned by the Association.

In its motion for summary judgment, the Association denied that it had a duty to light the area where the decedent fell because it did not own the retaining wall or property in the area. The Association also denied that it assumed a duty to provide lighting throughout the entire subdivision or where the decedent fell.

The circuit court entered summary judgment in favor of the Association on July 24, 2019. Reddick appeals the judgment.

Facts Related to Points II and III

---

[2] All Rule references are to the Missouri Supreme Court Rules (2021), unless otherwise indicated.

[3] Reddick admitted all of the facts alleged by the Association, except this one. He responded that this fact could not be admitted or denied because it was unknown, which deemed it admitted. In response to a motion for summary judgment, the non-moving party must admit or deny each of the movant's factual assertions. Rule 74.04(c)(2); *U.S. Bank, N.A. v. Molk*, 618 S.W.3d 652, 659 (Mo. App. E.D. 2021). When a response neither admits nor denies a factual assertion, the assertion is deemed admitted. *Jordan v. Peet*, 409 S.W.3d 553, 560 (Mo. App. W.D. 2013).

3

In the First Amended Petition, Reddick also alleged that Dockins negligently inspected McCullough's property and failed to identify and report the dangerous drop-off condition. Dockins notified his liability insurer, Acuity, of the lawsuit. On December 14, 2018, Acuity denied coverage.

On April 19, 2019, Dockins's counsel notified Acuity that Dockins had entered a Section 537.065 agreement with Reddick. Twelve days later, on May 1, 2019, Acuity moved to intervene in the lawsuit pursuant to Section 537.065.2 and Rule 52.12(a)(2). *See* RSMo § 537.065.2 (2017). The exhibits to Acuity's motion included the Agreement.

The Agreement contains the following language relevant to this appeal:

2. Agreement. [Dockins] will consent to the claim against him being severed from the remaining claims in the lawsuit for a separate, court-tried trial. [Dockins] will consent to the entry of a Judgment in favor of [Reddick] and against him in an amount to be determined by the Court at this trial, with the specific condition that [Reddick] may attempt to collect the Judgment only from any insurance which may apply to his claims, which the parties believe to be Acuity Insurance Company . . ..

3. Consideration. . . . [Dockins] denies any and all liability to [Reddick] in this Lawsuit. However, [Dockins] has tendered the Claims raised in the Lawsuit as well as the Lawsuit itself to all available insurance carriers and was denied a defense or indemnification. . . . [Dockins] by entering this contract waives his right to contest liability in exchange for the avoidance of further costly litigation and a limitation on his personal exposure. [Reddick] by this contract obtains judgment in the amount of his actual losses without the burden of additional litigation in exchange for limiting his collection ability on the Judgment to any insurance which may apply to his claims . . ..

The Agreement contains a signature block for Dockins and his counsel, and they signed and dated the Agreement on April 17, 2019. The Agreement does not include a signature block for Reddick, and his signature does not appear on the Agreement.

The circuit court granted Acuity's motion to intervene on May 13, 2019. Shortly thereafter, Dockins's counsel withdrew, and new counsel provided by Acuity entered his appearance on behalf of Dockins.

4

Dockins and Acuity moved for summary judgment on June 3, 2019. On June 5, 2019, Reddick moved to amend the petition to include Acuity as a defendant. On the same day, Reddick also filed a motion for a separate trial against Dockins and attached the Agreement as an exhibit. After the motions were briefed, the circuit court denied Dockins's and Acuity's motion for summary judgment without further comment. The court also ordered "a separate trial on the claim of Plaintiff against Defendant Melvin Dockins (in which Acuity, a Mutual Insurance Company, has intervened)."

After settling with McCullough and the Reddicks, Reddick filed a Fifth Amended Petition. Reddick repeated his negligence claim against Dockins and alleged that Dockins breached the Agreement by contesting his liability regarding the negligence claim. For his claims against Acuity, Reddick alleged that the Agreement with Dockins was binding on Acuity. He acknowledged that "Missouri is not a direct action state," but maintained that that he was entitled to enforce the Agreement, and to specific performance of the Agreement, as to both Dockins and Acuity. Reddick also pleaded that Acuity tortiously interfered with the Agreement by intervening and contesting Dockins's liability.

Dockins and Acuity filed motions to dismiss the Petition. Dockins contended that Reddick failed to state a negligence claim against him because Dockins was hired by McCullough to inspect his home and owed no duty of care to the decedent as a matter of law, and that Reddick failed to plead any facts showing that Dockins caused the decedent's death. Dockins also argued that the Petition failed to state a claim for breach of contract because the Agreement was unenforceable and its purpose had been frustrated by Acuity's intervention. The Agreement was one of the exhibits to Dockins's motion. In its motion, Acuity reiterated Dockins's arguments as to the negligence claim against him. Regarding the claims against Acuity, it argued that Missouri law

5

prohibits direct actions against insurance companies and that the tortious interference claim should be dismissed for failure to state a claim.

Reddick concluded the parties' extensive briefing of the motions with a notice of recent decision informing the court of *Knight ex rel. Knight v. Knight*, 609 S.W.3d 813 (Mo. App. W.D. 2020). Reddick submitted that, before *Knight*, the court "had no authority to consult that spoke directly to whether § 537.065.2 R.S.Mo. gave an insurer who denies coverage an unconditional right to contest liability." He argued that "Acuity intervened in this suit after the Plaintiff and Defendant Dockins reached their .065 Agreement and Dockins no longer had any right to contest liability," meaning that Acuity likewise could not contest liability as a consequence of *Knight*. Reddick conceded that Section 537.065.2 and *Knight* did not provide any guidance regarding whether, by intervening, Acuity was subject to a direct action by Reddick, and even that the court may determine, "based upon the *Knight* Court's discussion of the role and rights of an Intervenor, that the claims made directly against Acuity in the Fifth Amended Petition should be dismissed."

The circuit court held a hearing on the motions, granted both Dockins's and Acuity's motions to dismiss, and dismissed all claims against them without prejudice. Reddick appeals the circuit court's judgment granting the motions to dismiss.[4]

**Discussion**

<u>Point I</u>

Reddick argues that the Association was not entitled to summary judgment because it owed a duty to adequately light the subdivision or it assumed such a duty.

---

[4] A dismissal without prejudice generally is not a final, appealable judgment. But such a dismissal that has the practical effect of terminating the litigation is appealable. *Avery Cont., LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo. banc 2016); *Mayes v. Saint Luke's Hosp. of Kan. City*, 430 S.W.3d 260, 265 (Mo. banc 2014). A dismissal without prejudice also is appealable when the plaintiff elects not to plead further and stands on the dismissed pleadings. *Mayes*, 430 S.W.3d at 265-66. For these reasons, the circuit court's dismissal is a final, appealable judgment.

6

The standard of review for summary judgment is *de novo*. *Kroner Invs., LLC v. Dann*, 583 S.W.3d 126, 128 (Mo. App. E.D. 2019). A circuit court's order granting summary judgment will be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We review the facts in the record in the light most favorable to the non-moving party. *Id.*

Initially, Reddick eschews that there is any genuine issue of material fact. Instead, he suggests that undisputed material facts militated against summary judgment for the Association. In his response to the Association's motion for summary judgment, Reddick set forth additional material facts. His facts included that an industry publication called *The Lighting Handbook* is a definitive guide for the sufficiency of lighting, the Association's exercise of ordinary care would have caused it to install lighting to the standard in the handbook, and measurements by Reddick's expert showed that the Association did not do so. Though Reddick characterizes these facts as undisputed, they were not admitted by the Association and are not uncontroverted material facts.

In compliance with Rule 74.04, the Association objected to and moved to strike Reddick's additional material facts as "irrelevant and immaterial to the determination of whether [the Association] had a duty to install or provide lighting in the area where the decedent allegedly fell." A motion to strike is an adequate response in place of an admission or denial under Rule 74.04(c). *Show-Me Inst. v. Off. of Admin.*, 2022 WL 904703 at *2 n.4 (Mo. App. W.D. Mar. 29, 2022) (citing *Jungmeyer v. City of Eldon*, 472 S.W.3d 202, 205 (Mo. App. W.D. 2015)).

The Association correctly objected that Reddick's additional facts were irrelevant and immaterial. *The Lighting Handbook* and Reddick's associated facts are not material facts because they beg the primary question of whether the Association owed a duty to adequately light the entire subdivision, including where the decedent fell. Below, we conclude the Association had no such

7

duty. Thus, whether or not the Association complied with the handbook in installing lighting is irrelevant, and we are presented with no genuine issue of material fact. *See Wilson v. Union Pac. R.R. Co.*, 509 S.W.3d 862, 869 (Mo. App. E.D. 2017) (stating a disputed fact must be "material," *i.e.*, "it has legal probative force as to a controlling issue in the litigation," to avoid summary judgment).

The only remaining issue for discussion, then, is whether the Association was entitled to judgment as a matter of law, that is, whether it had a common law duty to adequately light the subdivision or undertook that duty by discussing lighting in Association meetings and installing five streetlights in common areas.

To prevail on a negligence claim in a wrongful death case, a plaintiff must prove: (1) the defendant owed a duty of care to the decedent; (2) the defendant breached that duty; (3) the breach was the actual and proximate cause of the decedent's death; and (4) the plaintiff suffered damages as a result of the breach. *Scales v. Whitaker*, 615 S.W.3d 425, 429 (Mo. App. E.D. 2020). A moving party is entitled to judgment as a matter of law if the undisputed facts show that any one of the elements is not met. *Hughes v. Maritz, Wolff & Co., LLC*, 601 S.W.3d 306, 310 (Mo. App. E.D. 2020). The element of duty in a negligence claim is a question of law for the circuit court to determine before a plaintiff can go to trial on the claim. *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654 (Mo. banc 2019).

Reddick acknowledges in his appellate brief that no Missouri court has found a duty by a homeowner's association in these circumstances. Instead, he relies on two cases from California and Arizona as persuasive authority, *Frances T. v. Vill. Green Owners Ass'n*, 723 P.2d 573 (Cal. 1986), and *Martinez v. Woodmar IV Condos. Homeowners Ass'n, Inc.*, 941 P.2d 218 (Ariz. 1997). Those cases are unpersuasive.

8

In both *Frances* and *Martinez*, the defendants were condominium associations that effectively were landlords in maintaining common areas of the condominium complexes, and repeatedly were put on notice of violent criminal activity in the complexes. In *Frances*, the plaintiff was raped and robbed in her condominium and sued the condominium association for negligent failure to adequately light the common areas of the complex, including in front of her condominium. 723 P.2d at 574. The "fundamental issue" was whether the condominium association "owed plaintiff the same duty of care as would a landlord in the traditional landlord-tenant relationship." *Id.* at 576. The court found that "under the circumstances of this case the Association should be held to the same standard of care as a landlord." *Id.* The court concluded that "traditional tort principles impose on landlords, no less than on homeowner associations that function as a landlord in maintaining the common areas of a large condominium complex, a duty to exercise due care for the residents' safety in those areas under their control." *Id.* at 576-77.

In *Martinez*, the plaintiff was shot on a condominium complex parking lot while visiting the complex. 941 P.2d at 219. The court was "concerned only with the question of whether Defendant, occupying a status similar to that of a landlord, had a duty of reasonable care to maintain the safety of its common areas because it had control over the land." *Id.* at 220. The court, citing *Frances*, held that, "with respect to common areas under its exclusive control, a condominium association has the same duties as a landlord." *Id.* at 221.

The present case does not involve a condominium complex, a common area, a condominium association that assumed the role of landlord, violent criminal activity, or any other dangerous condition of which the association had been made aware before the incident. Here, the Association is a homeowner's association with no control over the private property on which the decedent fell. *See Bloxham v. Glock Inc.*, 53 P.3d 196, 201 (Ariz. Ct. App. 2002) (distinguishing

*Martinez* because "the plaintiff in *Martinez* was harmed while on the defendant's property, but the victims here were not"). Even if the Association somehow were deemed a landlord, as were the defendants in *Frances* and *Martinez*, Missouri law generally protects landlords from liability for personal injuries caused by dangerous conditions existing on leased premises, with the exception of common areas. *LaBarbera v. Malec*, 540 S.W.3d 903, 907 (Mo. App. E.D. 2018). Simply put, the Association had no common law duty to adequately light the private property where the decedent fell.

Still, Reddick argues the Association undertook a duty to light the area where the decedent fell because it contemplated lighting the subdivision and installed five streetlights in common areas. Reddick is correct insofar as a defendant who assumes a duty, by conduct or contract, may be liable for injuries caused by the unsafe performance of the assumed duty. *Scales*, 615 S.W.3d at 438 (citing *Bowan ex rel. Bowan v. Express Med. Transp., Inc.*, 135 S.W.3d 452, 457 (Mo. App. E.D. 2004)). "However, a defendant's liability is no broader than the duty assumed." *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 920 (Mo. App. W.D. 2004) (citing *Teichman v. Potashnick Constr., Inc.*, 446 S.W.2d 393, 400 (Mo. banc 1969)).

In the seminal *Teichman* case, the Supreme Court of Missouri held that the defendant construction company, which made temporary repairs to a public road by filling potholes to keep the road usable for its trucks, did not assume a legal duty to use ordinary care to keep the road (not to mention adjoining private property) reasonably safe. 446 S.W.2d at 400. Presciently, the court continued, "The rule relating to voluntary repairs in the landlord-tenant . . . cases cannot reasonably be applied in the factual situation disclosed in this case." *Id.*; *see also Lange v. Wehrenberg Theaters, Inc.*, 870 S.W.2d 880, 885 (Mo. App. E.D. 1993) (affirming summary judgment because defendant movie theater that periodically inspected and repaired portions of abutting public

sidewalk did not assume duty to inspect, repair, and maintain entire sidewalk, including portion where plaintiff fell). Here, by discussing lighting the subdivision and installing five streetlights in common areas, the Association did not assume a duty to adequately light every area of the subdivision, including the private property where the decedent fell.

Point I is denied. We affirm the circuit court's summary judgment in favor of the Association.

Point II

Reddick argues that the circuit court erred in granting Dockins's and Acuity's motions to dismiss the negligence and breach of contract claims against Dockins because Reddick properly pleaded the elements of those claims. He underscores that the negligence claim should not have been dismissed without resolving the "threshold issue" of whether the Agreement prohibited Dockins and Acuity from contesting liability, and that the negligence and breach of contract claims stand together.[5]

We review the circuit court's granting of a motion to dismiss *de novo*. *Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 491-92 (Mo. App. E.D. 2021). When the circuit court does not specify its reason for dismissing a petition, we presume that the judgment is based on a reason stated in the motion to dismiss. *Sebright v. Mann*, 607 S.W.3d 258, 262 (Mo. App. E.D. 2020). A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 55.27(a)(6) is solely a test of the adequacy of the plaintiff's petition. *Murray-Kaplan*, 617 S.W.3d

---

[5] Reddick's second point on appeal raises multiple, independent claims of error and is multifarious in violation of Rule 84.04(d). Multifarious points preserve nothing for review and are subject to dismissal. *Dieckmann v. JH Constr. 2, LLC*, 619 S.W.3d 513, 522 (Mo. App. E.D. 2021). "Compliance with Rule 84.04(d) is not a mere technicality that we enforce but rather compliance is necessary 'so that we do not improperly advocate for a party, waste judicial resources, or misinterpret what a party was arguing.'" *Id.* (quoting *Librach v. Librach*, 575 S.W.3d 300, 306 (Mo. App. E.D. 2019)). We nonetheless exercise our discretion to review this multifarious point *ex gratia* because our disposition of one claim of error also disposes of the other, and therefore our review is not unduly impeded by the point's deficiencies. *See Lexow v. Boeing Co.*, 2022 WL 791953 at *5 (Mo. banc Mar. 15, 2022).

11

at 491. When determining if the alleged facts meet the elements of the petitioner's claim, we take the alleged facts as true and grant the petitioner all reasonable inferences. *Sebright*, 607 S.W.3d at 262-63.

## I. Negligence Claim

Dockins and Acuity moved to dismiss Reddick's negligence claim on the bases that Dockins owed no duty of care to the decedent as a matter of law, and Reddick did not plead that Dockins's breach of any duty caused the decedent's death. On appeal, Reddick argues that Dockins owed a duty to the decedent and Reddick properly pleaded causation. As we explain below, Dockins owed no duty to the decedent.

Reddick nonetheless argues that the Agreement between Reddick and Dockins prevented both Dockins and Acuity from moving to dismiss the negligence claim and otherwise contesting liability in the first instance. Reddick points out that, in the Petition, he pleaded that he was entitled to enforce the Agreement against both Dockins and Acuity, and sought specific performance of the Agreement against them. He therefore insists that the effect of the Agreement is a threshold issue that must be decided before we address the merits of the negligence claim.

Dockins responds that the Agreement is altogether unenforceable because it went unsigned by Reddick. He directs us to the requirement in Section 537.065.6 that an agreement under that section "shall be in writing and signed by the parties." Dockins overlooks that the Agreement allegedly was entered in April 2019, but subsection 6 was added to Section 537.065 more than two years later, effective July 28, 2021. *See* RSMo § 537.065.6 (2021); H.B. 345, 101st Gen. Assemb., 1st Reg. Sess. (Mo. 2021). Dockins does not address, and we therefore decline to consider, whether the 2021 amendment is a continuation of the previous statute or whether it applies retroactively. *See Desai v. Seneca Specialty Ins. Co.*, 581 S.W.3d 596 (Mo. banc 2019).

12

Reddick replies that the Agreement is an enforceable contract because the Petition pleaded a *prima facie* breach of contract claim, including the existence of the Agreement and the parties' mutual obligations. He argues alternatively that, at the very least, the Agreement's enforceability was a fact issue for the circuit court. "[I]n the absence of a signature, the party claiming that a contract was formed must present other evidence to establish its assent to abide by the terms of the agreement." *Baier v. Darden Rests.*, 420 S.W.3d 733, 739 (Mo. App. W.D. 2014). Thus, whether a purported contract is binding in the absence of a signature is a question of fact. *Id.*; *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 134 (Mo. App. E.D. 2005). Considering that Reddick is the party claiming a contract was formed, and it is his signature that is not on the Agreement, one would expect that he could establish his own assent to the Agreement.

Regardless, even if we accept Reddick's position, he cannot prevail. As will become apparent, whether the Agreement is enforceable, and whether its effect is a threshold issue to the negligence claim, the result is the same. Therefore, at Reddick's behest, but without deciding if this necessarily is a threshold issue, we address the effect of the Agreement before we consider the merits of Reddick's negligence claim against Dockins.

### A. Effect of the Agreement

The parties offer dueling interpretations of the Agreement. Dockins and Acuity point out that Dockins "denies any and all liability to [Reddick]" in the Agreement. They argue that Dockins did not admit liability, and the Agreement would not have compelled him to do so at trial. They maintain that, even assuming Dockins agreed not to contest liability, nothing in the Agreement relieved Reddick of his duties to plead and prove his negligence cause of action. Acuity also points out that no consent judgment was ever agreed upon or entered. Reddick focuses on the Agreement's language that Dockins "will consent to the entry of a Judgment in favor of [Reddick]

13

and against him" and "waives his right to contest liability." He argues the Agreement contemplates a consent judgment with a trial on damages only.

If Dockins and Acuity are correct, then Reddick retained the burdens to plead and prove his negligence claim. As we conclude below, and as the circuit court apparently concluded in granting the motions to dismiss, Reddick cannot state a negligence claim as a matter of law. If Reddick's interpretation of the Agreement prevails, then the Agreement relieved Reddick of his burdens to plead and prove the negligence claim and precluded Dockins from moving to dismiss that claim.[6] In either event, Acuity was not a party to the Agreement and was not precluded from moving to dismiss the negligence claim.

"It is a well settled principle of Missouri law that a contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it." *Siebert v. Peoples Bank*, 632 S.W.3d 461, 469 (Mo. App. S.D. 2021) (quoting *Cont'l Cas. Co. v. Campbell Design Grp., Inc.*, 914 S.W.2d 43, 44 (Mo. App. E.D. 1996)); *see also Turner v. Wesslak*, 453 S.W.3d 855, 858 (Mo. App. E.D. 2014) ("It has long been a basic tenet of contract law that one not a party to a contract is not bound thereby and is not liable for breach of a contract to which he is not a party." (internal quotations omitted)).

More to the point here, the 2017 version of Section 537.065.2, the version in effect at the time of the Agreement and when Acuity intervened, provided that an insurer may "intervene as a matter of right" in certain lawsuits involving claims for damages against an insured whose insurer had denied coverage. RSMo § 537.065.2 (2017); H.B. 339 & 714, 99th Gen. Assemb., 1st Reg.

---

[6] Acuity cites *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 709 (Mo. banc 2011), for the propositions that Reddick "must establish the elements of his negligence claim regardless of the enforceability or non-enforceability of the §537.065 contract," and "the court itself must find that a duty exists as a matter of law before allowing Reddick's claims to proceed to judgment." *Schmitz* does not stand for those propositions. The *Schmitz* plaintiffs had to prove the elements of their negligence claims to the court because the terms of the Section 537.065 agreement in that case contained no agreement concerning liability or damages. *Id.* at 704, 709.

14

Sess. (Mo. 2017). The legislature added subsection 2 to Section 537.065 to establish an insurer's right to intervene where the courts had not previously recognized a common law right to intervene. *See Desai*, 581 S.W.3d at 597-601; *Knight*, 609 S.W.3d at 819-20. With the addition of Section 537.065.2, the legislature addressed the common scenario in which an insured, after entering a Section 537.065 agreement, had little or no incentive to mount a defense (and may even be contractually prohibited from doing so), and the plaintiff sought to bind the insurer to the outcome of the litigation. *Knight*, 609 S.W.3d at 820, 822.

Despite these basic principles of contract law and Acuity's right to intervene under Section 537.065.2, Reddick urges that the Agreement "is binding on Defendant Acuity as it was reached between Plaintiff and Defendant Dockins before Acuity intervened." Relying exclusively on *Knight*, Reddick disputes that Acuity could contest Dockins's liability in its motion to dismiss, because "Acuity intervened in this suit after the Plaintiff and Defendant Dockins reached their .065 Agreement and Dockins no longer had any right to contest liability."[7] Even if Reddick's recitation of Dockins's rights under the Agreement is correct, he is incorrect as a matter of law regarding *Knight* and the Agreement's binding Acuity.

*Knight* does not stand for the proposition that a Section 537.065 agreement between a plaintiff and an insured also binds the insurer. In *Knight*, the defendant insureds entered a Section 537.065 agreement with the plaintiff, their grandson, after their insurer denied coverage. 609 S.W.3d at 816. They agreed that the plaintiff's negligence claims would be resolved by binding arbitration, where the plaintiff would present his case and the insureds would not contest liability.

---

[7] Reddick does not rely on *Schmitz*, though *Schmitz* concluded that an insurer was bound by the parties' Section 537.065 agreement and the resulting judgment because the insurer unjustifiably and repeatedly refused to defend its insured and to control and manage the trial. 337 S.W.3d at 709-10. Perhaps *Schmitz* is absent from Reddick's briefs because it is easily distinguished. The Section 537.065 agreement in that case did not address liability or damages, those matters were determined in a bench trial in which the insurer chose not to participate, and there was no appeal of the judgment. *Id.* at 704, 709. *Schmitz* also predates the legislature's 2017 and 2021 amendments to Section 537.065 establishing an insurer's right to intervene and clarifying the insurer's rights upon intervening.

The insureds also agreed not to oppose confirmation of any arbitration award, not to seek to have the award vacated, and not to appeal the judgment of the circuit court. At the uncontested arbitration, the arbitrator found the plaintiff's grandfather negligent and awarded damages, but found that the plaintiff did not prove his negligence claim against his grandmother. *Id.* 816-817. After the arbitrator issued his arbitration award, the insureds informed their insurer of the Section 537.065 agreement. The insurer intervened and filed a motion to vacate the arbitrator's award. *Id.* at 818. The circuit court entered judgment confirming the arbitration award, and the insurer appealed the judgment to the Western District of this Court. *Id.* at 816, 817-18.

On appeal, a two-judge majority of the Western District first engaged in a lengthy discussion of the insurer's statutory right to appeal. *Id.* at 818-21. The court concluded that, just as an insurer had the right to intervene under Section 537.065.2, it also had the right to appeal a judgment entered following the insurer's intervention. *Id.* at 820.

Turning to the merits, the court rejected, as a matter of statutory interpretation, the insurer's argument that the right to intervene under Section 537.065.2 included the right to contest liability and damages "whatever the status of the litigation at the time of the insurer's intervention." *Id.* The court reasoned that the legislature had the option to, but did not, amend Section 537.065 to give the insurer the right to defend the insured's liability and damages "regardless of the progress of the litigation against the insured at the time of the intervention." *Id.* at 822. After intervening, the insurer became a party to the lawsuit with the same rights as any other party to the litigation, but the insurer "must accept the action pending *as he finds it at the time of the intervention.*" *Id.* at 823-24 (emphasis in original) (quoting *Martin v. Busch*, 360 S.W.3d 854, 858 n.5 (Mo. App. E.D.

16

2011)).[8] The court observed that, before the insurer intervened, the insureds had entered a Section 537.065 agreement and agreed to arbitrate, and the arbitration had in fact occurred. By the time of the insurer's intervention, the insured grandfather, who was found liable by the arbitrator, no longer had the right to contest his liability or damages, and Section 537.065.2 did not give the insurer greater rights than those possessed by its insured or any other intervenor. *Knight*, 609 S.W.3d at 824.[9]

Contrary to Reddick's argument, the holding in *Knight* is not that a Section 537.065 agreement between a plaintiff and insureds also binds an intervening insurer and prohibits the insurer from contesting liability and damages. Rather, *Knight*'s holding that the insurer was prohibited from contesting liability and damages rested on the court's interpretation of the scope of the insurer's rights after intervening under Section 537.065.2, not on the terms of the Section 537.065 agreement. The *Knight* court determined that Section 537.065.2 did not give the insurer the right to re-litigate liability and damages after they already had been decided. 609 S.W.3d at 822. The late stage of the litigation after the arbitrator's finding of liability and award of damages, not the terms of the Section 537.065 agreement, was outcome determinative.

The *Knight* dissent took issue with the majority's narrow reading of the insurer's rights upon intervening under Section 537.065.2, as well as the suggestion that a Section 537.065 agreement somehow binds an insurer. *See Knight*, 609 S.W.3d at 829-838 (Chapman, J., dissenting); *id.* at 838 n.7 ("[I]t seems a much more strained interpretation of amended section 537.065 to conclude (as the majority does) that the legislature allowed such insurers the

---

[8] In *Martin*, this Court continued, "Having been permitted to become a party in order to better protect his interest, an intervenor is allowed to set up his own affirmative cause or defense appropriate to the case and his intervention." 360 S.W.3d at 858 n.5.

[9] Notably, the court did *not* say that, by the time of the insurer's intervention, the insureds grandparents, both of whom were bound by the Section 537.065 agreement, no longer had the right to contest their liability or damages.

17

opportunity to intervene . . . in order to do nothing."). But the outcome in *Knight* demonstrably did not turn on whether the Section 537.065 agreement bound the insurer. The simple fact that the *Knight* majority took up the merits of the appeal dispels that notion. At the outset, the court discussed the insurer's right to appeal at length. *Id.* at 818-21. There was no allusion that the Section 537.065 agreement prohibited the insurer from appealing, though the uncontroverted terms of the agreement prohibited the insureds from doing exactly that. *See id.* at 817.

What is more, the issue on appeal was the circuit court's confirmation of the arbitration award over the insurer's opposition. *Id.* at 816. The agreement bound the insureds "not to oppose confirmation of any arbitration award in the circuit court or to seek to have the award vacated," yet the insurer opposed confirmation of the arbitration award and moved to vacate the award. *Id.* at 817. The insurer's motion to vacate the award was unsuccessful not because the agreement prohibited it, but as a matter of law. At the time of the insurer's intervention, "the only pending question in the litigation was whether the arbitration award should be confirmed, or whether it was instead subject to vacation." *Id.* at 827. The *Knight* court emphasized that, pursuant to Section 435.400, the limited grounds for vacating an award "do not include re-litigating the facts or legal issues determined by the award." 609 S.W.3d at 827 (quoting *Britt v. Otto*, 577 S.W.3d 133, 144 (Mo. App. W.D. 2019)).

Thus, *Knight* is unavailing to Reddick because, here, the litigation before the circuit court was not at the same advanced stage.[10] Pursuant to Section 537.065.2, Acuity timely intervened

---

[10] *Knight* also is distinguishable precisely because Reddick insists that his claims are to be deemed admitted under the Agreement. *Knight* stressed, "This is not a case in which claims for which the insurer might ultimately be responsible were simply deemed admitted, based on the complete inaction of the purportedly liable party." 609 S.W.3d at 825. There, the plaintiff retained the burden to prove his claims and failed to do so against the second insured. *Id.* The implication is that the result may have been different—the insurer could have contested liability and damages even after they had been decided—had the Section 537.065 agreement rendered the claims admitted. If Reddick's interpretation of the Agreement is correct, then *a fortiori* Acuity could contest liability before it was decided by the circuit court.

even before Reddick submitted the Agreement to the circuit court, much less before the circuit court determined liability or damages. Neither Section 537.065, the Agreement between Reddick and Dockins, nor any caselaw we can find inhibited Acuity from moving to dismiss Reddick's negligence claim against Dockins.

Finally, we note that *Knight* dealt with a closing window in time. Since the 2017 amendments, Missouri courts, as in *Knight*, have scuffled with the scope of an insurer's statutory rights after intervening. *See Barnett v. Columbia Maint. Co.*, 632 S.W.3d 396, 413-14 (Mo. App. E.D. 2021) (Dowd, J., concurring) ("[N]either the legislature nor our own Supreme Court have clarified the parameters of an insurance company's participation in litigation when it has intervened under section 537.065.2. The statute merely *gives a right* to intervene but does not address the prickly question of what they get to do once they enter." (emphasis in original)). As already mentioned, the legislature revisited the statute a second time with its 2021 amendments. *See* RSMo § 537.065.4 (2021). Going forward at least, the question of the parameters Section 537.065 itself sets for an insurer's statutory rights after intervening will more readily be resolved by reference to the 2021 amendments. The amendments fortify the right to intervene and clarify an insurer's broad rights upon intervening:

> Any insurer or insurers who receive notice pursuant to this section shall have the unconditional right to intervene in any pending civil action involving the claim for damages within thirty days after receipt of such notice. Upon intervention pursuant to this section, the intervenor shall have all rights afforded to defendants under the Missouri rules of civil procedure and reasonable and sufficient time to meaningfully assert its position including, but not limited to, the right and time to conduct discovery, the right and time to engage in motion practice, and the right to a trial by jury and sufficient time to prepare for trial. No stipulations, scheduling orders, or other orders affecting the rights of an intervenor and entered prior to intervention shall be binding upon the intervenor.

> *Id.*

The amendments only edify our conclusions here.

**B. Merits of the Negligence Claim**

Having determined that Acuity was not prohibited from moving to dismiss the negligence claim against Dockins, we turn to the merits of the circuit court's dismissal of that claim. We reiterate that the elements of a negligence cause of action are duty, breach, causation, and damages. *Scales*, 615 S.W.3d at 429. The duty element is a question of law. *Tharp*, 587 S.W.3d at 654.

In determining if a duty exists, Missouri courts consider several factors, including the foreseeability of the harm. *Bluehaven Funding, LLC v. First American Title Ins. Co.*, 594 F.3d 1055, 1060 (8th Cir. 2010) (citing *Bowan*, 135 S.W.3d at 457). Another important factor is a relationship between the plaintiff and the defendant that the law recognizes as a basis for the duty of care. *Bowan*, 135 S.W.3d at 457. Foreseeability, for purposes of determining if a duty exists, is defined as "the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it." *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 156 (Mo. banc 2000). A mere possibility of harm is insufficient. *Id.*

In general, a defendant who contracts with another does not owe a duty to non-parties. *Ebert v. Ebert*, 627 S.W.3d 571, 586 (Mo. App. E.D. 2021). A non-party cannot typically sue for negligent performance of the agreement. *Id.* at 585-86. This rule of privity is designed to protect parties to a contract from exposure to unlimited liability and to prevent burdening the parties with obligations not voluntarily assumed. *Id.* at 586; *Haney v. Fire Ins. Exch.*, 277 S.W.3d 789, 792 (Mo. App. S.D. 2009).

Reddick suggests that there is no Missouri case addressing whether a home inspector owes a duty to a third party injured on the inspected premises. But *Haney* is instructive. There, a homeowner's insurer hired an inspector to conduct an environmental study after a tornado damaged the home. 277 S.W.3d at 790. The inspector found dangerous concentrations of mold in

the home. The plaintiff construction company hired by the homeowners to repair the damage pleaded that the defendant inspector was negligent in failing to timely disclose its findings to the plaintiff. *Id.* The *Haney* court concluded the defendant inspector owed no duty to the plaintiff, which was not a party to the inspection contract between the homeowner's insurer and the inspector. *Id.* at 792-93.

We likewise conclude that Dockins owed no duty to the decedent, who was not a party to the inspection contract between inspector Dockins and homeowner McCullough. Indeed, the case for finding a duty here is more attenuated than in *Haney*. Dockins contracted with McCullough, not with the Reddicks, McCullough's neighbors. Decedent Susan Reddick was an invitee of the Reddicks, not of McCullough, but she fell on McCullough's property. Any relationship among the parties was more diffuse, and the harm to the injured party less foreseeable, than in *Haney*. *See Bowan*, 135 S.W.3d at 457; *Lopez*, 26 S.W.3d at 156.

Given our holding that Dockins owed no duty of care to the decedent, we need not address Dockins's and Acuity's secondary argument that Reddick failed to plead causation. We affirm the circuit court's dismissal of Reddick's negligence claim against Dockins.

## II. Breach of Contract Claim

The Petition alleged that Dockins breached the Agreement by contesting his liability regarding the negligence claim and that Reddick was damaged by this breach. Dockins moved to dismiss Reddick's breach of contract claim because the Agreement is unenforceable and the purpose of the Agreement was frustrated by Acuity's intervention and defense of Dockins. Reddick maintains on appeal that the Agreement is enforceable and he pleaded a breach of contract claim.

21

The elements of a breach of contract claim are: (1) the existence and terms of a contract including certain rights and obligations between the parties; (2) the defendant breached his obligation under the contract; and (3) the plaintiff suffered damages from the breach. *Khalil v. 3HB Corp.*, 621 S.W.3d 1, 8 (Mo. App. E.D. 2021).

Reddick acknowledges in his brief that "the purpose of the Agreement was to resolve Plaintiff's claims against Dockins." His view of the Agreement is that Dockins would not contest liability regarding the negligence claim and Reddick would prove damages. It may be said that the purpose of the Agreement was frustrated, and Dockins's performance rendered impossible, by the dismissal of the negligence claim. *See BancorpSouth Bank v. Paramont Props., L.L.C.*, 349 S.W.3d 363, 368 (Mo. App. E.D. 2011); *Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 609 (Mo. App. E.D. 2009). Regardless if we speak in terms of frustration of purpose or impossibility of performance, the Agreement could not be completed without a negligence claim to be resolved.

As we already have concluded, the Agreement did not bind Acuity, Acuity duly moved to dismiss the negligence claim, and the negligence claim correctly was dismissed for lack of any duty owed by Dockins. With the dismissal of the negligence claim, the purpose of the Agreement was negated and Reddick could not prove damages from Dockins's failure to perform. *See Guidry v. Charter Comms., Inc.*, 269 S.W.3d 520, 532 (Mo. App. E.D. 2008) ("The goal in awarding damages is to put the non-breaching party in the same position as if the contract would have been performed."). Put another way, if Dockins had fully performed, no benefit or value would have accrued to Reddick. *See Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679, 704 (Mo. App. E.D. 2019) ("In a breach of contract case, the measure of damages is the benefit of the bargain, *i.e.*, the value of the performance of the contract." (internal quotations omitted)). Reddick's refrain on

22

appeal is that the negligence and breach of contract claims stand together, but the opposite also is true.

Point II is denied. The judgment of the circuit court dismissing Reddick's negligence and breach of contract claims against Dockins is affirmed.

Point III

In his third and final point, Reddick argues that the circuit court erred in granting Acuity's motion to dismiss the claims against Acuity. He persists that he may pursue a direct action against Acuity based on its intervention, and he pleaded a claim for tortious interference with the Agreement.

Whether Reddick pleaded a direct action against Acuity is uncertain. The Petition is non-compliant with the admonition in Rule 55.11 that "[e]ach claim founded upon a separate transaction or occurrence . . . shall be in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." None of Reddick's claims, including any direct action against Acuity, is designated a separate count, which renders the claims unclear.

To the extent Reddick pleaded a direct action against Acuity, well established Missouri common law prohibited him from doing so. Reddick concedes in his appellate brief that the longstanding rule in Missouri is that an injured party generally may not pursue a direct action against a liability insurer of an insured who allegedly caused the harm. *See Youngs v. Conley*, 505 S.W.3d 305, 315 (Mo. App. W.D. 2016) (citing *Desmond v. Am. Ins. Co.*, 786 S.W.2d 144, 145 (Mo. App. W.D. 1989)).

Reddick's qualms about Acuity's intervention notwithstanding, nothing in the language of Section 537.065.2 alters the rule against direct actions. Reddick himself volunteered that *Knight*'s recognition of an insurer's right to intervene under Section 537.065.2 may be cause to dismiss

23

Reddick's direct action against Acuity. For that matter, the legislature's amendments giving an insurer the right to intervene in 2017, and clarifying the rights of an insurer after intervening in 2021, hardly manifest an intent to change the common law rule to allow a direct action against an insurer for exercising those statutory rights. *See Kolar v. First Student, Inc.*, 470 S.W.3d 770, 777 (Mo. App. E.D. 2015) ("The legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent.").

Finally, the Petition failed to state a claim for tortious interference with a contract. The elements of that claim are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) intentional interference by the defendant causing a breach of the contract; (4) absence of justification; and (5) damages resulting from the defendant's conduct. *Rail Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 259 (Mo. App. E.D. 2017).

Reddick pleaded that he and Dockins entered the Agreement, which was binding on Acuity. He alleged that Acuity, by intervening and defending Dockins, interfered with the Agreement to "undo and frustrate the settlement," which continuously damaged Reddick. What is missing is any allegation that Acuity was without justification for intervening. *See Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 245-46 (Mo. App. E.D. 2011) (affirming dismissal of tortious interference claim for failing to plead facts showing absence of justification).

Even had Reddick pleaded absence of justification, he could not have stated a claim for tortious interference as a matter of law. There is an absence of justification when a defendant has no legal right to take the actions about which the plaintiff complains. *Howard v. Youngman*, 81 S.W.3d 101, 115 (Mo. App. E.D. 2002). We already have concluded that Section 537.065.2 afforded Acuity a right to intervene, and upon intervening Acuity had a right to contest Dockins's

liability. Further, Rule 52.12(a), governing intervention as a matter of right, provides that "upon timely application anyone shall be permitted to intervene in an action . . . when a statute of this state confers an unconditional right to intervene."

Point III is denied. The circuit court's judgment dismissing Reddick's claims against Acuity is affirmed.

## Conclusion

The judgment of the circuit court is affirmed.

Cristian M. Stevens, J.

Sherri B. Sullivan, C.J., and
Angela T. Quigless, J., concur.